**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **VIRTUAL CHART SOLUTIONS I, INC.,** | |
| **Plaintiff,** | |
| **v.** | |
| 1) **BRIAN LEE MEREDITH;** | **CIVIL ACTION NO.: 4:17-cv-546** |
| 2) **VIRTUAL CHART NETWORK, LLC;** | |
| 3) **TRACIE DAWN DAVIS;** | **JURY TRIAL DEMANDED** |
| 4) **VIRTUALASC.COM (d.b.a. MYPICASE.COM);** | |
| 5) **VIRTUAL CHART SOLUTIONS, LLC;** | |
| 6) **SURGICAL NOTES, INC.;** | |
| 7) **SURGICAL NOTES MDP, LP;** | |
| 8) **SURGICAL NOTES GP, LLC;** | |
| 9) **SURGICAL NOTES RCM, LLC; and** | |
| 10) **MRI CENTERS OF TEXAS, LLC,** | |
| **Defendants.** | |

## COMPLAINT

1.      Virtual Chart Solutions I, Inc. files this complaint for: copyright infringement; inducement to infringe copyright; contributory copyright infringement; vicarious copyright infringement; breach of fiduciary duty; breach of contract; misappropriation of trade secrets; unfair competition; and accounting against all defendants. Plaintiff makes the following allegations against: Brian Lee Meredith; Virtual Chart Network, LLC; Tracie Dawn Davis; virtualasc.com (d.b.a. myPIcase.com); Virtual Chart Solutions, LLC; Surgical Notes, Inc.; Surgical Notes MDP, LP; Surgical Notes GP, LLC; Surgical Notes RCM, LLC; and MRI Centers Of Texas, LLC (collectively "Defendants").

## PARTIES

2.      Plaintiff Virtual Chart Solutions I, Inc. ("VCSI" or "Plaintiff") is a for-profit corporation formed under the laws of the State of Texas, having its principal place of business at 3840 W Northwest Highway, Suite 400, Dallas, Texas 75220.  Plaintiff's president is Grover Shields.

3.      On information and belief, Brian Lee Meredith ("Meredith") is an individual residing at 470 Adriatic Parkway, Apartment 2143, McKinney, Texas 75070.

4.      On information and belief, Tracie Dawn Davis ("Davis") is an individual residing at 470 Adriatic Parkway, Apartment 2143, McKinney, Texas 75070.

5.      On information and belief, Virtual Chart Network, LLC ("Network") is a Texas limited liability company having had a principal place of business at 3990 Vitruvian Way, Apartment 1169, Addison, Texas 75001. Network was formed having Meredith and Davis as Managers of the limited liability company. On information and belief, Network no longer operates at the Addison, Texas address, and may be served through either Meredith or Davis – both of whom reside at 470 Adriatic Parkway, Apartment 2143, McKinney, Texas 75070.

6.      On information and belief, virtualasc.com (d.b.a. myPIcase.com) ("myPIcase.com") is an unregistered business having a principal place of business at 470 Adriatic Parkway, Apartment 2143, McKinney, Texas 75070. On information and belief, myPIcase.com is owned and operated by Meredith, and may be served through Meredith.

7.      On information and belief, Virtual Chart Solutions, LLC ("Chart") is a Texas limited liability company having had a principal place of business at 8009 Craftsbury Ln., McKinney, Texas 75071. Chart was formed having Meredith as a Manager of the limited liability company. On information and belief, Chart no longer operates at the Craftsbury Ln. address, and may be served through Meredith at 470 Adriatic Parkway, Apartment 2143, McKinney, Texas 75070.

8.      On information and belief, Surgical Notes, Inc. ("SN Inc.") is a for-profit Texas corporation, Surgical Notes MDP, LP ("SNLP") is a Texas limited partnership; Surgical Notes GP, LLC ("SNLLC") is a Texas limited liability company; and Surgical Notes RCM, LLC ("SNRCM") is a Texas limited liability company (collectively "Surgical"). Each of the Surgical entities has a principal place of business at 3100 Monticello Ave., Suite 450, Dallas, Texas 75205. SNRCM has Randall Bishop listed as its Registered Agent in the State of Texas, at the 3100 Monticello address. SN Inc., SNLP, and SNLLC each have Jeff Blankinship listed as their Registered Agent in the State of Texas, at the 3100 Monticello address.

9.     On information and belief, MRI Centers Of Texas, LLC ("MCT") is a Texas limited liability company having had a principal place of business at 420 S. Cesar Chavez Blvd., Suite 200, Dallas, Texas 75201. MCT was formed having Ardell Archer, an individual residing in Quinlan, Texas, and Robert Shields, an individual residing in Heath, Texas, as Governing Members. MCT's Registered Agent for service of process in the State of Texas appears to be Friedman & Feiger, LLP at 5301 Spring Valley Rd., Suite 200, Dallas, Texas 75254.

## JURISDICTION AND VENUE

10.     This action arises under the copyright laws of the United States, Title 17 of the United States Code. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), and 17 U.S.C. § 101, *et seq*.

11.     This Court has supplemental jurisdiction over VCSI's claims arising under the laws of Texas, pursuant to 28 U.S.C. § 1367(a), because these claims are so related to VCSI's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative fact(s).

12.     Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1) and 1400(a). All Defendants reside, or have a principal place of business, within the State of Texas. Defendants Meredith and Davis are both domiciled in McKinney, Texas – which is in Collin County and within the Sherman Division of the Eastern District of Texas.

13.     Defendants are subject to this Court's specific and general personal jurisdiction, pursuant to due process and/or the Texas Long Arm Statute, due at least to their substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this Judicial District.

## FACTS COMMON TO ALL CLAIMS

14.     On April 1, 2011, Defendant Meredith formed Defendant Chart. Meredith was listed as the Registered Agent for Chart, at Meredith's former place of residence at 8009 Craftsbury Ln., McKinney, Texas 75071.

15.     On April 18, 2011, Meredith registered the Internet domain name "virtualasc.com" and, when doing so, listed Chart as the registrant organization.

16.     VCSI was incorporated under the laws of the State of Texas on May 17, 2013 – based upon a certificate of formation form filed with the Texas Secretary of State. That certificate of formation form listed Grover "Bob" Shields as "Director 1" and Defendant Meredith as "Director 2."

17.     On May 18, 2013, VCSI adopted resolutions in lieu of holding an organizational meeting of the Board of Directors. Those resolutions appointed Defendant Meredith as the President and Secretary of VCSI, and Grover Shields as the Vice President, Treasurer and Assistant Secretary.

18.     VCSI was formed and operated to develop, market, sell and support healthcare software systems and services – particularly those focused on digital records and systems, automation of digital record systems, and web-based healthcare record management systems.

19.     VCSI spent considerable time and expense developing trade secrets, and confidential and proprietary information – all of which was not generally known outside VCSI – that gave VCSI numerous advantages over its competitors. VCSI took all necessary measures to protect and guard its trade secret and proprietary information – including requiring Meredith to sign the agreements described in paragraphs 22 – 46, below.

20.     On February 11, 2015, Meredith resigned from VCSI. VCSI accepted Meredith's resignation, and removed him from his role as president and director.

21.     From May of 2013 through February of 2015, Meredith was a director and officer of VCSI. Meredith's duties and activities within VCSI focused on the development, sales, and service of VCSI's software systems for digitizing and automating medical billing and records keeping. By virtue of Meredith's role and responsibilities within VCSI, he had direct access to VCSI proprietary information – including prospective clients, lists of clients and suppliers, VCSI databases, and other VCSI trade secrets.

22.     No later than August 30, 2013, Meredith entered into the Proprietary Information and Inventions Agreement ("PIIA") with VCSI, attached as Exhibit A.

23.     In the PIIA, Meredith agrees that his employment with VCSI "shall be deemed to include any relationship of service to the Company [VCSI] that I may have had prior to actually becoming an employee" of VCSI. *See* Ex. A at p.1, preamble.

24.     In the PIIA, Meredith states that he has not entered into, nor will he enter into "any agreement either written or oral in conflict with this Agreement [PIIA]" or with his employment with VCSI. Ex. A at p.1, ¶ 1.

25.     In the PIIA, Meredith states that he has not "retained anything containing any confidential information of a prior employer or other third party, whether or not created by me [Meredith]." *Id.*

26.     In the PIIA, Meredith assigns to VCSI all intellectual property rights developed or acquired during his employment there, stating that VCSI "shall own all right, title and interest (including patent rights, copyrights, trade secret rights, mask work rights, sui generis database rights and all other intellectual property rights of any sort throughout the world) relating to any and all inventions (whether or not patentable), works of authorship, mask works, designs, know-how, ideas and information made or conceived or reduced to practice, in whole or in part, by me during the term of my employment with Company [VCSI] (collectively "Inventions"), and I will promptly disclose all Inventions to Company [VCSI]." Ex. A at p.2, ¶ 2.

27.     In the PIIA, Meredith next makes "all assignments necessary to accomplish the foregoing." *Id.*

28.     In the PIIA, Meredith states "[I]f I wish to clarify that something created by me prior to my employment that relates to Company's actual or proposed business is not within the scope of the foregoing assignment, I have listed it on Appendix A in a manner that does not violate any third party rights or disclose any confidential information." *Id.*

29.     Appendix A of the PIIA – entitled "Prior Matter" – lists nothing, as shown below:



Ex. A at p.4.

30.     In the PIIA, Meredith agrees that "all Inventions and all other business, technical and financial information (including, without limitation, the identity of and information relating to customers or employees) I develop, learn or obtain during the term of my employment that relate to Company or the business or demonstrably anticipated business of Company or that are received by or for Company in confidence, constitute "Proprietary Information." I will hold in confidence and not disclose or, except within the scope of my employment, use any Proprietary Information." Ex. A at pp. 1-2, ¶ 3.

31.     In the PIIA, Meredith agrees that "during the term of my employment with Company (whether or not during business hours), I will not engage in any activity that is in any way competitive with the business or demonstrably anticipated business of Company, and I will not assist any other person or organization in competing or in preparing to compete with any business or demonstrably anticipated business of Company." Ex. A at p.2, ¶ 5.

32.     In the PIIA, Meredith agrees that the PIIA "is not an employment contract for any particular term and that I have the right to resign and Company has the right to terminate my employment at will, at any time, for any or no reason, with or without cause. In addition, this Agreement does not purport to set forth all of the terms and conditions of my employment, and, as an employee of Company, I have obligations to Company which are not set forth in this Agreement. However, the terms of this Agreement govern over any inconsistent terms and can

only be changed by a subsequent written agreement signed by the Vice President of Company." Ex. A at p.2, ¶ 6.

33.     In the PIIA, Meredith agrees that "my obligations under paragraphs 2, 3 and 4 of this Agreement shall continue in effect after termination of my employment, regardless of the reason or reasons for termination, and whether such termination is voluntary or involuntary on my part, and that Company is entitled to communicate my obligations under this Agreement to any future employer or potential employer of mine. My obligations under paragraphs 2 and 3 also shall be binding upon my heirs, executors, assigns, and administrators and shall inure to the benefit of Company, it subsidiaries, successors and assigns." Ex. A at p.2, ¶ 7.

34.     In the PIIA, Meredith states "I also understand that any breach of this Agreement will cause irreparable harm to Company for which damages would not be an adequate remedy, and, therefore, Company will be entitled to injunctive relief with respect thereto in addition to any other remedies and without any requirement to post bond." Ex. A at p.2, ¶ 8.

35.     Concurrent with the PIIA, Meredith (individually) and Chart (corporately, by and through Meredith, as the Manager of Chart) entered into the Technology Assignment Agreement ("TAA") with VCSI, which is incorporated as pp. 5-8 of Exhibit A.

36.     For the purposes of the TAA, Meredith and Chart were jointly referred to as "Developer". Ex. A at p.5, preamble.

37.     In the TAA, Developer assigns to VCSI all intellectual property rights, stating that "Developer hereby assigns to the Company [VCSI] exclusively throughout the world all right, title and interest (whether or not now existing) in (i) the subject matter referred to in Exhibit A [of the TAA] ("Technology"), (ii) all precursors, portions and work in progress with respect thereto and all inventions, works of authorship, mask works, technology, information, know-how, materials and tools relating thereto or to the development, production, use, support or maintenance thereof and (iii) all copyrights, patent rights, trade secret rights, trademark rights, mask works rights, sui generis database rights and other intellectual property rights and all business, contract rights and goodwill in, incorporated or embodied in, used to develop or produce or use, or related to any of the foregoing ((i), (ii) and (iii) are collectively "Intellectual Property")." Ex. A at p.5, ¶ 1.

38.    Exhibit A of the TAA – referred to within the TAA as "Technology" – reads as follows:

**EXHIBIT A**

All technology, know-how, information, intellectual property and other materials for or relevant to Virtual Chart Solutions, LLC, including, but not limited to, all business plans, technical plans, specifications, templates, demonstration versions, equipment, software, devices, methods, apparatus, product designs, trademarks or logos relevant to the foregoing.

Ex. A at p.8.

39.    Some examples of logo and icon materials assigned to VCSI as a result of the TAA include, but are not limited to:



40.     In the TAA, Developer "agrees to assist the Company [VCSI] in every proper way to evidence, record and perfect the Section 1 assignment and to apply for and obtain recordation of and from time to time secure, enforce, maintain and defend the assigned rights. If the Company is unable for any reason whatsoever to secure the Developer's signature to any document requested by the Company under this Section 3.1, Developer hereby irrevocably designates and appoints the Company and its duly authorized officers and agents as Developer's agents and attorneys-in-fact, coupled with an interest and with full power of substitution, to act for and on Developer's behalf and instead of Developer, to execute and file any such document or documents and to do all other lawfully permitted acts to further the purposes of the foregoing with the same legal force and effect as if executed by Developer." Ex. A at p.5, ¶ 3.

41.     In the TAA, Developer states that it "will not use or disclose anything assigned to the Company [VCSI] hereunder or any other technical or business information or plans of the Company, except to the extent Developer (i) can document that it is generally available (through no fault of Developer) for use and disclosure by the general public without any charge, license or restriction, or (ii) is permitted to use or disclose such information or plans pursuant to the Proprietary Information and Inventions Agreement by and between BRIAN MEREDITH and the Company of even date herewith." Ex. A at p.5, ¶ 4.

42.     In the TAA, Developer agrees that "there is no adequate remedy at law for a breach of this Section 4, that such a breach would irreparably harm the Company [VCSI] and that the Company is entitled to equitable relief (including, without limitation, injunctive relief) with respect to any such breach or potential breach in addition to any other remedies and without any requirement to post bond." Ex. A at pp. 5-6, ¶ 4.

43.     In the TAA, Developer represents and warrants to VCSI that "the Developer (i) was the sole owner (other than the Company [VCSI]) of all rights, title and interest in the Intellectual Property and the Technology, (ii) has not assigned, transferred, licensed, pledged or otherwise encumbered any Intellectual Property or the Technology or agreed to do so, (iii) has full power and authority to enter into this Agreement [TAA] and to make the assignment as provided in Section 1, (iv) is not aware of any violation, infringement or misappropriation of any third party's rights (or any claim thereof) by or in connection with the Intellectual Property or the Technology, (v) was not acting within the scope of employment by any third party when

conceiving, creating or otherwise performing any activity with respect to anything purportedly assigned in Section 1 and (iv) is not aware of any questions or challenges with respect to the patentability or validity of any claims of any existing patents or patent applications relating to the Intellectual Property." Ex. A at p. 6, ¶ 5.

44.     In the TAA, Developer agrees – *inter alia* – that "[N]o failure to exercise, and no delay in exercising, on the part of either party, any privilege, any power or any rights hereunder will operate as a waiver thereof, nor will any single or partial exercise of any right or power hereunder preclude further exercise of any other right hereunder … [T]he prevailing party in any action to enforce this Agreement shall be entitled to recover costs and expenses including, without limitation, attorneys' fees … [A]ny waivers or amendments shall be effective only if made in writing and signed by a representative of the respective parties authorized to bind the parties. Both parties agree that this Agreement is the complete and exclusive statement of the mutual understanding of the parties and supersedes and cancels all previous written and oral agreements and communications relating to the subject matter of this Agreement." Ex. A at p. 6, ¶ 6.

45.     In the TAA, Developer agrees that their "obligations under paragraphs 2, 3 and 4 of this Agreement [TAA] shall continue in effect after termination of my employment, regardless of the reason or reasons for termination, and whether such termination is voluntary or involuntary on my part, and that Company [VCSI] is entitled to communicate my obligations under this Agreement to any future employer or potential employer of mine. My obligations under paragraphs 2 and 3 also shall be binding upon my heirs, executors, assigns, and administrators and shall inure to the benefit of Company, it subsidiaries, successors and assigns." Ex. A at p. 6, ¶ 7.

46.     In the TAA, Developer restates agreements that "any breach of this Agreement will cause irreparable harm to Company for which damages would not be an adequate remedy, and, therefore, Company will be entitled to injunctive relief with respect thereto in addition to any other remedies and without any requirement to post bond." Ex. A at p. 6, ¶ 8.

47.     VCSI is the sole and proper owner of all copyrights and intellectual property, by the assignments made from Meredith – individually, and on behalf of Chart – in both the PIIA and TAA, executed no later than August 30, 2013. In the PIIA signed by Meredith, no exclusions

of assigned material were included as "Prior Matter" in Appendix A. In the TAA signed by Meredith, he specifically assigned to VCSI all existing and pre-existing intellectual property rights he possessed, including those held by Chart – for software and all related methods to VCSI's business.

48.     As of at least as early as August 30, 2013, VCSI owned – and still owns – all rights, title and interest in the copyrights and all other intellectual property of Chart and myPIcase.com, as well as all of Meredith's works made prior to and during his employment with VCSI.

49.     All such copyrights that VCSI owns all rights and interest in, and title to – including the literal sources code underlying the Billing, vImage, VCSImages, VCN, VCS, vChiro, and VCS Web modules – as recorded with the United States Copyright Office in Registration Nos. TXu 2-038-670, *et seq*. ("VCSI Copyright Materials"), attached collectively as Exhibit B.

50.     On July 11, 2014, Defendants Meredith and Davis formed Defendant Network as a Texas limited liability company, based upon the certificate of formation form filed with the Texas Secretary of State. That certificate of formation form lists Meredith and Davis as Managers of Network, and lists both Meredith's and Davis' address as 3990 Vitruvian Way, Apartment 1169, Addison, Texas 75001. Upon information and belief, that was Davis' domicile at that time. The certificate of formation is attached as Exhibit C.

51.     In order to secure the July 11th formation of Network, Meredith filed a Form 509 – Consent to Use Similar Name – with the Texas Secretary of State on behalf of VCSI, without the authority from or consent of VCSI.

52.     Upon information and belief, Meredith provided Davis access to VCSI proprietary information – including VCSI client and provider contracts – while Meredith was still employed by VCSI.

53.     As early as July 11, 2014, and throughout at least 2015, Meredith and Davis operated Defendant Network in direct conflict and competition with VCSI's own Virtual Chart Network (VCN) systems.

54. Upon information and belief, the operation and service offerings of Network were/are nearly identical to those of VCSI's own Virtual Chart Network (VCN) systems.

55. On or about February 19, 2015, Meredith prepared a Certificate of Termination form (Form 651) for Network, to be filed with the Texas Secretary of State. Upon information and belief, that form was never filed and Network was never properly terminated.

56. Upon information and belief, Meredith and Davis resumed and/or continued operation of Network in 2015.

57. On April 16, 2014, VCSI invoiced Memorial Ambulatory Surgery Center in Mt. Holley, NJ ("MASC"), for services and support provided by VCSI, in the amount of $10,000. MASC's records reflect payment of $10,000 – via check # 10220 – made out to "Virtual Chart Solutions" and sent via overnight delivery to 3990 Vitruvian Way, Apartment 1169, Addison, Texas 75001.

58. VCSI invoiced Defendant MCT each month – from December of 2013 to at least April of 2014 – for services provided on behalf of VCSI by Meredith.

59. Upon information and belief, Meredith – during his employment with VCSI – improperly provided Defendant MCT access to and use of VCSI's proprietary information and VCSI Copyright Materials.

60. Upon information and belief, Defendant MCT has utilized and accessed – and continues to utilize and access – VCSI's proprietary information and VCSI Copyright Materials provided by Meredith.

61. On February 18, 2015, after Meredith resigned from VCSI, Meredith sent an email to a client of VCSI – DFW Injury Clinic – making tortious allegations about VCSI, and soliciting propriety information from that client.

62. On February 19, 2015, after Meredith resigned from VCSI, Meredith sent an email to a client of VCSI – Ohio Surgery Center – making tortious allegations about VCSI, and soliciting propriety information from that client.

63. As of April 19, 2017, the updated ICANN registration for the Internet domain name "virtualasc.com" lists Meredith as the Registrant Contact, Admin Contact, and Tech contact for the domain. Periodic updates and/or confirmation of the accuracy in a domain name

registrations is required by ICANN. Inaccurate or untimely update or correction of domain registration information can lead to breach of contract action(s) against domain registrars and registrants alike. As of April, 2017, the ICANN database lists Meredith's contact email address as "brian@surgicalnotes.com":

**Showing results for: VIRTUALASC.COM**
Original Query: virtualasc.com

## Contact Information

| Registrant Contact | Admin Contact | Tech Contact |
|---|---|---|
| Name: Brian Meredith | Name: Brian Meredith | Name: Brian Meredith |
| Organization: Virtual Chart Solutions | Organization: Virtual Chart Solutions | Organization: Virtual Chart Solutions |
| Mailing Address: 8009 Craftsbury Ln, Mckinney Texas 75071 US | Mailing Address: 8009 Craftsbury Ln, Mckinney Texas 75071 US | Mailing Address: 8009 Craftsbury Ln, Mckinney Texas 75071 US |
| Phone: (972) 365-9621 | Phone: (972) 365-9621 | Phone: (972) 365-9621 |
| Ext: | Ext: | Ext: |
| Fax: | Fax: | Fax: |
| Fax Ext: | Fax Ext: | Fax Ext: |
| Email:brian@surgicalnotes.com | Email:brian@surgicalnotes.com | Email:brian@surgicalnotes.com |

**Registrar**

WHOIS Server: whois.godaddy.com
URL: http://www.godaddy.com
Registrar: GoDaddy.com, LLC
IANA ID: 146
Abuse Contact Email:abuse@godaddy.com
Abuse Contact Phone: +1.4806242505

**Status**

Domain Status:clientTransferProhibited
http://www.icann.org/epp#clientTransferProhibited
Domain Status:clientUpdateProhibited
http://www.icann.org/epp#clientUpdateProhibited
Domain Status:clientRenewProhibited
http://www.icann.org/epp#clientRenewProhibited
Domain Status:clientDeleteProhibited
http://www.icann.org/epp#clientDeleteProhibited

**Important Dates**

Updated Date: 2017-04-19
Created Date: 2011-04-18
Registration Expiration Date: 2018-04-18

**Name Servers**

NS71.DOMAINCONTROL.COM
NS72.DOMAINCONTROL.COM

64.     The Internet domain name "surgicalnotes.com" routes traffic to the webpage for "Surgical Notes" having an address of 3100 Monticello Ave., Suite 450, Dallas, Texas 75205 – which is the address for all of the Surgical entities:



65.     Not surprisingly, Surgical offers electronic health records, billing, charting and document management software and services through its surgicalnotes.com domain.

66.     Upon information and belief, Meredith maintains a relationship with Surgical that involves software development and/or consulting.

67.     Through the "Surgical Notes" website, Surgical offers electronic health records, billing, charting and document management software and services that, upon information and belief, violate VCSI's Copyright Materials.

68.     Meredith's Internet domain name "virtualasc.com" currently routes traffic to a webpage titled "myPIcase.com" – a dead-end website page ("Dead-End Page") which appears as follows:

**WHAT IS MYPICASE.COM?**

This is a network for Payors and Medical professionals to track a patient's record throughout the entire Personal Injury Process.  This site is included at no cost to our members in order to provide accurate patient information throughout the process.  All members will be bound by the VCN Bussiness Associates Agreement in order to ensure the utmost patients confidentiality.  This will save your staff several hours per week of having to contact your providers and payors to ensure all documents have been sent/recieved and correct.



**PATIENTS**

1. View patient medical chart online.
2. View Appointments.
3. Complete Registration process from home (if Facility provides).
4. Get Directions to Appointments.
5. Store Drivers License / Insurance Cards.

69.     Upon initial viewing, there appear to be no active links from this published page to any other page, and no contact or business information is listed on this page. However, the descriptive text on this page reads: "This is a network for Payors and Medical professionals to track a patient's record throughout the entire Personal Injury Process.  This site is included at no cost to our members in order to provide accurate patient information throughout the process.  All members will be bound by the *VCN* Bussiness[sic] Associates Agreement" (emphasis added).

70.     This page is published as "Dead-End Page" – which is intended to lead viewers to believe that they've reached an inactive or out-of-date website.

71.     Active access to Meredith's "myPIcase.com" website is actually provided through its hidden home page at "virtualasc.com/main.aspx" (the "Main Page") – which does provide active links to the remainder of the website:



72.    The descriptive text on the Main Page is nearly identical to that appearing on the Dead-End Page, stating "This is a network for Payors and Medical professionals to track a patient's record throughout the entire Personal Injury Process. All members will be bound by the myPIcase.com Bussiness [sic] Associates Agreement."

73.    The Main Page provides active links to: a) a login screen for medical providers,



attorneys, and patients;



as well as an attorney marketing/sign up page;



as well as a medical provider marketing/sign up page; and a listing of "Partners" – appearing to be companies that use or support the services offered through myPIcase.com.



74.    Meredith's myPIcase.com utilizes multiple VCSI Copyright Materials (e.g., "VCN", "VCS") without a license or permission from VCSI.

75.    The Internet domain name "mypicase.com" is actually registered to Michael Maly – an attorney located in Lyndhurst, Ohio. There is no active website associated with this actual domain name, and there is no evidence – at this time – that Mr. Maly is aware of Meredith's misuse of "myPIcase.com" or has given Meredith permission to use that name.

## COUNT I
## MEREDITH'S INFRINGEMENT OF VCSI'S COPYRIGHTS

76.    Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 75, inclusive, and incorporates them by reference herein.

77.    Plaintiff is the valid and registered owner of the copyrights in each of the VCSI Copyright Materials, including the literal source code underlying the VCSI Copyright Materials as recorded with the United States Copyright Office in Registration Nos. TXu 2-038-670, et seq., attached collectively as Exhibit B.

78.    Meredith, in his role and capacity as an employee and officer of VCSI, had actual and direct access to literal source code underlying the VCSI Copyright Materials, and – without

VCSI's consent or permission – copied or otherwise reproduced VCSI Copyright Materials, including literal source code.

79.    Meredith reproduced, reproduces, adapted, adapts, offered, offers, installed, installs, distributed and distributes unauthorized copies of VCSI Copyright Materials.

80.    At least as early as March 3, 2015, VCSI – through its legal counsel at the time – put Meredith on notice of his infringement of VCSI's intellectual property and warned Meredith of the consequences if he did not cease and desist.

81.    Meredith used, uses, operated, operates, offered, offers, installed, installs, distributed and distributes unauthorized copies of VCSI Copyright Materials through his Network, Chart and myPIcase.com operations; and to and through Defendants MCT and Surgical.

82.    The user interface and database structures of Meredith's Network, Chart and myPIcase.com operations actually utilize(d) infringing copies of VCSI Copyright Materials.

83.    Meredith has infringed, and continues to infringe, VCSI's copyrights by reproducing, adapting, distributing, and/or authorizing others to reproduce, adapt, and distribute copyrighted elements of VCSI Copyright Materials without authorization, in violation of the Copyright Act, 17 U.S.C. § 101, et seq.

84.    Plaintiff has never authorized or given consent to Meredith to use its copyright works in the manner complained of herein.

85.    Meredith's acts of infringement are willful, in disregard of, and with indifference to the lawful rights of Plaintiff.

86.    As a direct and proximate result of the infringements alleged herein, Plaintiff is entitled to damages and to Meredith's profits in amounts to be proven at trial, which are not currently ascertainable. Alternatively, Plaintiff is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504.

87.    Plaintiff is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

88.     As a result of Meredith's acts and conduct, Plaintiff  has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Plaintiff is informed and believes, and on that basis alleges, that, unless enjoined and restrained by this Court, Meredith will continue to infringe Plaintiff's rights in the VCSI Copyright Materials. Plaintiff is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin Meredith's continuous and ongoing infringement.

89.     Plaintiff is entitled to an order impounding any and all infringing materials pursuant to 17 U.S.C. § 503. Plaintiff has no adequate remedy at law for Meredith's wrongful conduct because: a) VCSI's copyrights are unique and valuable property, that inherently incorporated VCSI proprietary information, which have no readily determinable market value; b) Meredith's infringement harms, and has harmed, VCSI such that VCSI could not be made whole by any monetary award; and c) Meredith's wrongful conduct, and the resulting damage to VCSI, is ongoing and continuous.

## COUNT II
## NETWORK'S INFRINGEMENT OF VCSI'S COPYRIGHTS

90.     Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 89, inclusive, and incorporates them by reference herein.

91.     Plaintiff is the valid and registered owner of the copyrights in each of the VCSI Copyright Materials, including the literal source code underlying the VCSI Copyright Materials as recorded with the United States Copyright Office in Registration Nos. TXu 2-038-670, et seq., attached collectively as Exhibit B.

92.     Network – through Meredith, in his role and capacity as an employee and officer of VCSI – had actual and direct access to literal source code underlying the VCSI Copyright Materials, and – without VCSI's consent or permission – copied or otherwise reproduced VCSI Copyright Materials, including literal source code.

93.      Upon information and belief, Network reproduced, reproduces, adapted, adapts, offered, offers, installed, installs, distributed and distributes unauthorized copies of VCSI Copyright Materials.

94.     Network used, uses, operated, operates, offered, offers, installed, installs, distributed and distributes unauthorized copies of VCSI Copyright Materials through Network's operations.

95.     The user interface and database structures of the Network operations actually utilize(d) infringing copies of VCSI Copyright Materials.

96.     Network has infringed, and continues to infringe, VCSI's copyrights by reproducing, adapting, distributing, and/or authorizing others to reproduce, adapt, and distribute copyrighted elements of VCSI Copyright Materials without authorization, in violation of the Copyright Act, 17 U.S.C. § 101, et seq.

97.     Plaintiff has never authorized or given consent to Network to use its copyright works in the manner complained of herein.

98.     Network's acts of infringement are/were willful, in disregard of, and with indifference to the lawful rights of Plaintiff.

99.     As a direct and proximate result of the infringements alleged herein, Plaintiff is entitled to damages and to Network's profits in amounts to be proven at trial, which are not currently ascertainable. Alternatively, Plaintiff is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504.

100.    Plaintiff is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

101.    As a result of Network's acts and conduct, Plaintiff  has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Plaintiff is informed and believes, and on that basis alleges, that, unless enjoined and restrained by this Court, Network will continue to infringe Plaintiff's rights in the VCSI Copyright Materials. Plaintiff is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin Network's continuous and ongoing infringement.

102.    Plaintiff is entitled to an order impounding any and all infringing materials pursuant to 17 U.S.C. § 503. Plaintiff has no adequate remedy at law for Network's wrongful conduct because: a) VCSI's copyrights are unique and valuable property, that inherently

incorporated VCSI proprietary information, which have no readily determinable market value; b) Network's infringement harms, and has harmed, VCSI such that VCSI could not be made whole by any monetary award; and c) Network's wrongful conduct, and the resulting damage to VCSI, is continuous.

**COUNT III**
**DAVIS' INFRINGEMENT OF VCSI'S COPYRIGHTS**

103.    Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 102, inclusive, and incorporates them by reference herein.

104.    Plaintiff is the valid and registered owner of the copyrights in each of the VCSI Copyright Materials, including the literal source code underlying the VCSI Copyright Materials as recorded with the United States Copyright Office in Registration Nos. TXu 2-038-670, et seq., attached collectively as Exhibit B.

105.    Davis – through Meredith, in his role and capacity as an employee and officer of VCSI – had actual and direct access to literal source code underlying the VCSI Copyright Materials, and – without VCSI's consent or permission – copied or otherwise reproduced VCSI Copyright Materials, including the literal source code underlying the VCSI Copyright Materials.

106.    Upon information and belief, Davis reproduced, reproduces, adapted, adapts, offered, offers, installed, installs, distributed and distributes unauthorized copies of VCSI Copyright Materials.

107.    Davis used, uses, operated, operates, offered, offers, installed, installs, distributed and distributes unauthorized copies of VCSI Copyright Materials through her Network operations.

108.    The user interface and database structures of Davis' Network operations actually utilize(d) infringing copies of VCSI Copyright Materials.

109.    Davis has infringed, and continues to infringe, VCSI's copyrights by reproducing, adapting, distributing, and/or authorizing others to reproduce, adapt, and distribute copyrighted elements of VCSI Copyright Materials without authorization, in violation of the Copyright Act, 17 U.S.C. § 101, et seq.

110.    Plaintiff has never authorized or given consent to Davis to use its copyright works in the manner complained of herein.

111.    Davis' acts of infringement are/were willful, in disregard of, and with indifference to the lawful rights of Plaintiff.

112.    As a direct and proximate result of the infringements alleged herein, Plaintiff is entitled to damages and to Davis' profits in amounts to be proven at trial, which are not currently ascertainable. Alternatively, Plaintiff is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504.

113.    Plaintiff is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

114.    As a result of Davis' acts and conduct, Plaintiff  has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Plaintiff is informed and believes, and on that basis alleges, that, unless enjoined and restrained by this Court, Davis will continue to infringe Plaintiff's rights in the VCSI Copyright Materials. Plaintiff is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin Davis' continuous and ongoing infringement.

115.    Plaintiff is entitled to an order impounding any and all infringing materials pursuant to 17 U.S.C. § 503. Plaintiff has no adequate remedy at law for Davis' wrongful conduct because: a) VCSI's copyrights are unique and valuable property, that inherently incorporated VCSI proprietary information, which have no readily determinable market value; b) Davis' infringement harms, and has harmed, VCSI such that VCSI could not be made whole by any monetary award; and c) Davis' wrongful conduct, and the resulting damage to VCSI, is continuous.

<u>COUNT IV</u>
<u>CHART'S INFRINGEMENT OF VCSI'S COPYRIGHTS</u>

116.    Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 115, inclusive, and incorporates them by reference herein.

117.    Plaintiff is the valid and registered owner of the copyrights in each of the VCSI Copyright Materials, including the literal source code underlying the VCSI Copyright Materials

as recorded with the United States Copyright Office in Registration Nos. TXu 2-038-670, et seq., attached collectively as Exhibit B.

118.    Chart – through Meredith, in his role and capacity as an employee and officer of VCSI – had actual and direct access to literal source code underlying the VCSI Copyright Materials, and – without VCSI's consent or permission – copied or otherwise reproduced VCSI Copyright Materials, including literal source code.

119.    Upon information and belief, Chart reproduced, reproduces, adapted, adapts, offered, offers, installed, installs, distributed and distributes unauthorized copies of VCSI Copyright Materials.

120.    Chart used, uses, operated, operates, offered, offers, installed, installs, distributed and distributes unauthorized copies of VCSI Copyright Materials through Chart's operations.

121.    The user interface and database structures of the Chart operations actually utilize(d) infringing copies of VCSI Copyright Materials.

122.    Chart has infringed, and continues to infringe, VCSI's copyrights by reproducing, adapting, distributing, and/or authorizing others to reproduce, adapt, and distribute copyrighted elements of VCSI Copyright Materials without authorization, in violation of the Copyright Act, 17 U.S.C. § 101, et seq.

123.    Plaintiff has never authorized or given consent to Chart to use its copyright works in the manner complained of herein.

124.    Chart's acts of infringement are/were willful, in disregard of, and with indifference to the lawful rights of Plaintiff.

125.    As a direct and proximate result of the infringements alleged herein, Plaintiff is entitled to damages and to Chart's profits in amounts to be proven at trial, which are not currently ascertainable. Alternatively, Plaintiff is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504.

126.    Plaintiff is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

127.    As a result of Chart's acts and conduct, Plaintiff  has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Plaintiff is informed and believes, and on that basis alleges, that, unless enjoined and restrained by this Court, Chart will continue to infringe Plaintiff's rights in the VCSI Copyright Materials. Plaintiff is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin Chart's continuous and ongoing infringement.

128.    Plaintiff is entitled to an order impounding any and all infringing materials pursuant to 17 U.S.C. § 503. Plaintiff has no adequate remedy at law for Chart's wrongful conduct because: a) VCSI's copyrights are unique and valuable property, that inherently incorporated VCSI proprietary information, which have no readily determinable market value; b) Chart's infringement harms, and has harmed, VCSI such that VCSI could not be made whole by any monetary award; and c) Chart's wrongful conduct, and the resulting damage to VCSI, is continuous.

## COUNT V
## myPIcase.com'S INFRINGEMENT OF VCSI'S COPYRIGHTS

129.    Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 128, inclusive, and incorporates them by reference herein.

130.    Plaintiff is the valid and registered owner of the copyrights in each of the VCSI Copyright Materials, including the literal source code underlying the VCSI Copyright Materials as recorded with the United States Copyright Office in Registration Nos. TXu 2-038-670, et seq., attached collectively as Exhibit B.

131.    myPIcase.com – through Meredith, in his role and capacity as an employee and officer of VCSI – had actual and direct access to literal source code underlying the VCSI Copyright Materials, and – without VCSI's consent or permission – copied or otherwise reproduced VCSI Copyright Materials, including literal source code.

132.    Upon information and belief, myPIcase.com reproduced, reproduces, adapted, adapts, offered, offers, installed, installs, distributed and distributes unauthorized copies of VCSI Copyright Materials.

133.    myPIcase.com used, uses, operated, operates, offered, offers, installed, installs, distributed and distributes unauthorized copies of VCSI Copyright Materials through myPIcase.com's operations.

134.    The user interface and database structures of the myPIcase.com operations actually utilize(d) infringing copies of VCSI Copyright Materials.

135.    myPIcase.com has infringed, and continues to infringe, VCSI's copyrights by reproducing, adapting, distributing, and/or authorizing others to reproduce, adapt, and distribute copyrighted elements of VCSI Copyright Materials without authorization, in violation of the Copyright Act, 17 U.S.C. § 101, et seq.

136.    Plaintiff has never authorized or given consent to myPIcase.com to use its copyright works in the manner complained of herein.

137.    myPIcase.com's acts of infringement are/were willful, in disregard of, and with indifference to the lawful rights of Plaintiff.

138.    As a direct and proximate result of the infringements alleged herein, Plaintiff is entitled to damages and to myPIcase.com's profits in amounts to be proven at trial, which are not currently ascertainable. Alternatively, Plaintiff is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504.

139.    Plaintiff is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

140.    As a result of myPIcase.com's acts and conduct, Plaintiff  has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Plaintiff is informed and believes, and on that basis alleges, that, unless enjoined and restrained by this Court, myPIcase.com will continue to infringe Plaintiff's rights in the VCSI Copyright Materials. Plaintiff is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin myPIcase.com's continuous and ongoing infringement.

141.    Plaintiff is entitled to an order impounding any and all infringing materials pursuant to 17 U.S.C. § 503. Plaintiff has no adequate remedy at law for myPIcase.com's wrongful conduct because: a) VCSI's copyrights are unique and valuable property, that

inherently incorporated VCSI proprietary information, which have no readily determinable market value; b) myPIcase.com's infringement harms, and has harmed, VCSI such that VCSI could not be made whole by any monetary award; and c) myPIcase.com's wrongful conduct, and the resulting damage to VCSI, is ongoing and continuous.

**COUNT VI**
**MCT'S INFRINGEMENT OF VCSI'S COPYRIGHTS**

142.     Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 141, inclusive, and incorporates them by reference herein.

143.     Plaintiff is the valid and registered owner of the copyrights in each of the VCSI Copyright Materials, including the literal source code underlying the VCSI Copyright Materials as recorded with the United States Copyright Office in Registration Nos. TXu 2-038-670, et seq., attached collectively as Exhibit B.

144.     MCT – through Meredith, in his role and capacity as an employee and officer of VCSI – had actual and direct access to: literal source code underlying the VCSI Copyright Materials; VCSI trade secrets; and VCSI proprietary information. Without VCSI's consent or permission, MCT copied or otherwise reproduced VCSI Copyright Materials, including literal source code, and misappropriated VCSI proprietary information and trade secrets.

145.     Upon information and belief, MCT reproduced, reproduces, adapted, adapts, offered, offers, installed, installs, distributed and distributes unauthorized copies of VCSI Copyright Materials.

146.     MCT used, uses, operated, operates, offered, offers, installed, installs, distributed and distributes unauthorized copies of VCSI Copyright Materials through MCT's operations.

147.     The user interface and database structures of the MCT operations actually utilize(d) infringing copies of VCSI Copyright Materials.

148.     MCT has infringed, and continues to infringe, VCSI's copyrights by reproducing, adapting, distributing, and/or authorizing others to reproduce, adapt, and distribute copyrighted elements of VCSI Copyright Materials without authorization, in violation of the Copyright Act, 17 U.S.C. § 101, et seq.

149.    Plaintiff has never authorized or given consent to MCT to use its copyright works in the manner complained of herein.

150.    MCT's acts of infringement are/were willful, in disregard of, and with indifference to the lawful rights of Plaintiff.

151.    As a direct and proximate result of the infringements alleged herein, Plaintiff is entitled to damages and to MCT's profits in amounts to be proven at trial, which are not currently ascertainable. Alternatively, Plaintiff is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504.

152.    Plaintiff is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

153.    As a result of MCT's acts and conduct, Plaintiff  has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Plaintiff is informed and believes, and on that basis alleges, that, unless enjoined and restrained by this Court, MCT will continue to infringe Plaintiff's rights in the VCSI Copyright Materials. Plaintiff is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin MCT's continuous and ongoing infringement.

154.    Plaintiff is entitled to an order impounding any and all infringing materials pursuant to 17 U.S.C. § 503. Plaintiff has no adequate remedy at law for MCT's wrongful conduct because: a) VCSI's copyrights are unique and valuable property, that inherently incorporated VCSI proprietary information, which have no readily determinable market value; b) MCT's infringement harms, and has harmed, VCSI such that VCSI could not be made whole by any monetary award; and c) MCT's wrongful conduct, and the resulting damage to VCSI, is ongoing and continuous.

## COUNT VII
## SURGICAL'S INFRINGEMENT OF VCSI'S COPYRIGHTS

155.    Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 154 inclusive, and incorporates them by reference herein.

156.    Plaintiff is the valid and registered owner of the copyrights in each of the VCSI Copyright Materials, including the literal source code underlying the VCSI Copyright Materials as recorded with the United States Copyright Office in Registration Nos. TXu 2-038-670, et seq., attached collectively as Exhibit B.

157.    Surgical – through Meredith, in his role and capacity as an employee and officer of VCSI – had actual and direct access to literal source code underlying the VCSI Copyright Materials, and – without VCSI's consent or permission – copied or otherwise reproduced VCSI Copyright Materials, including literal source code.

158.    Upon information and belief, Surgical reproduced, reproduces, adapted, adapts, offered, offers, installed, installs, distributed and distributes unauthorized copies of VCSI Copyright Materials.

159.    Surgical used, uses, operated, operates, offered, offers, installed, installs, distributed and distributes unauthorized copies of VCSI Copyright Materials through Surgical's operations.

160.    The user interface and database structures of the Surgical operations actually utilize(d) infringing copies of VCSI Copyright Materials.

161.    Surgical has infringed, and continues to infringe, VCSI's copyrights by reproducing, adapting, distributing, and/or authorizing others to reproduce, adapt, and distribute copyrighted elements of VCSI Copyright Materials without authorization, in violation of the Copyright Act, 17 U.S.C. § 101, et seq.

162.    Plaintiff has never authorized or given consent to Surgical to use its copyright works in the manner complained of herein.

163.    Surgical's acts of infringement are/were willful, in disregard of, and with indifference to the lawful rights of Plaintiff.

164.    As a direct and proximate result of the infringements alleged herein, Plaintiff is entitled to damages and to Surgical's profits in amounts to be proven at trial, which are not currently ascertainable. Alternatively, Plaintiff is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504.

165.   Plaintiff is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

166.   As a result of Surgical's acts and conduct, Plaintiff  has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Plaintiff is informed and believes, and on that basis alleges, that, unless enjoined and restrained by this Court, Surgical will continue to infringe Plaintiff's rights in the VCSI Copyright Materials. Plaintiff is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin Surgical's continuous and ongoing infringement.

167.   Plaintiff is entitled to an order impounding any and all infringing materials pursuant to 17 U.S.C. § 503. Plaintiff has no adequate remedy at law for Surgical's wrongful conduct because: a) VCSI's copyrights are unique and valuable property, that inherently incorporated VCSI proprietary information, which have no readily determinable market value; b) Surgical's infringement harms, and has harmed, VCSI such that VCSI could not be made whole by any monetary award; and c) Surgical's wrongful conduct, and the resulting damage to VCSI, is ongoing and continuous.

## COUNT VIII
## MEREDITH'S CONTRIBUTORY INFRINGEMENT OF VCSI'S COPYRIGHTS

168.   Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 167, inclusive, and incorporates them by reference herein.

169.   Meredith has, with knowledge, materially contributed to copyright infringement in the United States. He has done so by enabling and encouraging third parties, including Defendants MCT and Surgical, to fraudulently obtain access to the VCSI Copyright Materials, and then, having done so, to engage in unauthorized reproduction of the VCSI Copyright Materials. He has also done so by enabling these third parties to use the software to create derivative works, particularly using VCSI proprietary information provided by Meredith in violation of his contractual and fiduciary duties to VCSI.

170.   Meredith's acts of infringement were willful, in disregard of, and with indifference to, the rights of VCSI.

171.     As a direct and proximate result, VCSI is entitled to damages and to Meredith's profits in amounts to be proven at trial, which are not currently ascertainable. Alternatively, VCSI is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504.

172.     VCSI further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

173.     As a result of Meredith's acts and conduct, VCSI has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. VCSI is informed and believes, and on that basis avers, that unless enjoined and restrained by this Court, Meredith will continue to contribute to infringement of VCSI's copyrights in the United States. VCSI is entitled to injunctive relief to restrain and enjoin Meredith's continuing unlawful conduct.

**COUNT IX**
**MEREDITH'S VICARIOUS INFRINGEMENT OF VCSI'S COPYRIGHTS**

174.     Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 173, inclusive, and incorporates them by reference herein.

175.     When third-party users – such as MASC, MCT and Surgical – engage in unauthorized use or reproduction of VCSI Copyright Materials, they engage in copyright infringement. The use or reproduction by such third parties is unauthorized, because payment for use/reproduction was misappropriated from VCSI by Meredith, as asserted in paragraphs 52-54, above, and Count X, below. Meredith – while still with VCSI – had the ability to control, prevent and discontinue the foregoing infringing conduct. Meredith failed and refused to exercise such control and prevention to limit infringement to the extent required by law. Meredith derived a direct financial benefit from this infringement.

176.     Meredith's acts of infringement – vicariously, through third parties such as MASC, MCT and Surgical – were willful, in disregard of, and with indifference to, the rights of VCSI. As a direct and proximate result, VCSI is entitled to damages and to Meredith's profits in amounts to be proven at trial, which are not currently fully ascertainable. Alternatively, VCSI is

entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504.

177.    VCSI further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

<u>**COUNT X**</u>
<u>**MEREDITH'S BREACH OF FIDUCIARY DUTY TO VCSI UNDER TEXAS LAW**</u>

178.    Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 177, inclusive, and incorporates them by reference herein.

179.    Meredith, as a Director and President of VCSI, had a fiduciary relationship with VCSI, and all the duties and responsibilities that accompany that fiduciary relationship, as of at least May 18, 2013.

180.    While in a fiduciary relationship with VCSI, Meredith breached that fiduciary duty on multiple occasions.

181.    On July 11, 2014, Meredith and Defendant Davis formed Defendant Network as a Texas limited liability company, based upon the certificate of formation form filed with the Texas Secretary of State.

182.    In order to secure the July 11th formation of Network, Meredith filed a Form 509 – Consent to Use Similar Name – with the Texas Secretary of State on behalf of VCSI, without the authority from or consent of VCSI.

183.    Upon information and belief, the operation and service offerings of Network were nearly identical to those of VCSI's own Virtual Chart Network (VCN) systems.

184.    Between July 11, 2014 and February 19, 2015, Meredith and Davis operated Defendant Network in direct conflict and competition with VCSI's own Virtual Chart Network (VCN) systems.

185.    Upon information and belief, Davis, Network and Meredith misappropriated VCSI proprietary information and trade secrets in order to solicit clients/customers for Network.

186.    During his tenure with VCSI, Meredith was paid as a full time employee of VCSI – even while he was operating a competing business, soliciting work for himself personally,

misappropriating payments to VCSI, and violating VCSI's copyrights, trade secrets, and proprietary information.

187.     During his tenure with VCSI, Meredith performed work for MCT – for which MCT was billed by VCSI. Upon information and belief, Meredith either waived or misappropriated payments made, or to be made, from MCT to VCSI.

188.     During his tenure with VCSI, Meredith performed work for MCT, during which time Meredith provided MCT with access to VCSI proprietary information and trade secrets - including information about VCSI clients and prospective clients.

189.     Upon information and belief, Meredith provided MCT staff with access to VCSI contacts and account information, providing MCT with valuable competitive information obtained by MCT at VCSI's expense, and without VCSI's knowledge or authorization.

190.     On April 16, 2014, VCSI invoiced Memorial Ambulatory Surgery Center in Mt. Holley, NJ ("MASC"), for services and support provided by VCSI, in the amount of $10,000. MASC's records reflect payment of $10,000 – via check # 10220 – made out to "Virtual Chart Solutions" and sent via overnight delivery to 3990 Vitruvian Way, Apartment 1169, Addison, Texas 75001. Upon information and belief, Meredith misappropriated the payment.

191.     On April 4, 2013, Meredith was invoiced by Comfort Enterprises, LLC for a RamSoft PACS Lite system and set up in the amount of $12,500.00 – which was paid on April 22, 2013. Meredith submitted a request for reimbursement from VCSI for this invoice, in the amount of $45,027.50.

192.     During a period of time from – upon information and belief – the last half of 2014 through February of 2015, Meredith was soliciting and negotiating business with an owner of a chain of surgical centers in the state of California. Meredith's solicitation of this business was for his own personal gain, and in direct competition with and not for the benefit of VCSI.

193.     On February 18, 2015, after Meredith resigned from VCSI, Meredith sent an email to a client of VCSI – DFW Injury Clinic – making tortious allegations about VCSI, and soliciting propriety information from that client.

194.    On February 19, 2015, after Meredith resigned from VCSI, Meredith sent an email to a client of VCSI – Ohio Surgery Center – making tortious allegations about VCSI, and soliciting propriety information from that client.

195.    On February 18, 2015, after Meredith resigned from VCSI, Meredith sent an email to VCSI's IT and server support contractor; making tortious allegations about VCSI, and soliciting the contractor to improperly provide Meredith with two databases – vcs_master and vchart-1001 – that were VCSI proprietary information, and the VCSI's copyright materials.

196.    Meredith repeated breaches of his fiduciary duties resulted in numerous financial and reputational injuries to VCSI, and improper material and financial benefits to Meredith. As a direct and proximate result, VCSI is entitled to damages and to Meredith's profits in amounts to be proven at trial, which are not currently fully ascertainable. Alternatively, VCSI is entitled to maximum statutory damages – including exemplary damages – as may be proper under Texas state law.

197.    As a result of Meredith's multiple and repeated breaches of his fiduciary duties to VCSI, VCSI has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. VCSI is informed and believes, and on that basis avers, that unless enjoined and restrained by this Court, Meredith continues – and will continue – to breach his fiduciary duties to VCSI. VCSI is entitled to injunctive relief to restrain and enjoin Meredith's continuing unlawful conduct.

### COUNT XI
### MEREDITH'S BREACH OF CONTRACT WITH VCSI UNDER TEXAS LAW

198.    Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 197, inclusive, and incorporates them by reference herein.

199.    No later than August 30, 2013, Meredith entered into both the PIIA and TCC contracts with VCSI. Proper consideration for those contracts was given by both VCSI and Meredith, and acknowledged as such in each respective document.

200.    The PIIA is a valid contract, as is the TAA.

201.    In the PIIA, Meredith agreed that his employment with VCSI "shall be deemed to include any relationship of service to the Company [VCSI] that I may have had prior to actually

becoming an employee" of VCSI – which included services provided by Meredith and Chart since at least as early as July 26, 2012.

202.    In the PIIA, Meredith states that he has not entered into, nor will he enter into "any agreement either written or oral in conflict with this Agreement [PIIA]" or with his employment with VCSI.

203.    In the PIIA, Meredith states that he has not "retained anything containing any confidential information of a prior employer or other third party, whether or not created by me [Meredith]."

204.    In the PIIA, Meredith assigns to VCSI all intellectual property rights developed or acquired during his employment there, stating that VCSI "shall own all right, title and interest (including patent rights, copyrights, trade secret rights, mask work rights, sui generis database rights and all other intellectual property rights of any sort throughout the world) relating to any and all inventions (whether or not patentable), works of authorship, mask works, designs, know-how, ideas and information made or conceived or reduced to practice, in whole or in part, by me during the term of my employment with Company [VCSI] (collectively "Inventions"), and I will promptly disclose all Inventions to Company [VCSI]."

205.    In the PIIA, Meredith next makes "all assignments necessary to accomplish the foregoing."

206.    In the PIIA, Meredith states "[I]f I wish to clarify that something created by me prior to my employment that relates to Company's actual or proposed business is not within the scope of the foregoing assignment, I have listed it on Appendix A in a manner that does not violate any third party rights or disclose any confidential information." Meredith listed nothing in Appendix A of the PIIA.

207.    In the PIIA, Meredith agrees that "all Inventions and all other business, technical and financial information (including, without limitation, the identity of and information relating to customers or employees) I develop, learn or obtain during the term of my employment that relate to Company or the business or demonstrably anticipated business of Company or that are received by or for Company in confidence, constitute "Proprietary Information." I will hold in

confidence and not disclose or, except within the scope of my employment, use any Proprietary Information."

208.    In the PIIA, Meredith agrees that "during the term of my employment with Company (whether or not during business hours), I will not engage in any activity that is in any way competitive with the business or demonstrably anticipated business of Company, and I will not assist any other person or organization in competing or in preparing to compete with any business or demonstrably anticipated business of Company."

209.    In the PIIA, Meredith agrees that the PIIA "is not an employment contract for any particular term and that I have the right to resign and Company has the right to terminate my employment at will, at any time, for any or no reason, with or without cause. In addition, this Agreement does not purport to set forth all of the terms and conditions of my employment, and, as an employee of Company, I have obligations to Company which are not set forth in this Agreement. However, the terms of this Agreement govern over any inconsistent terms and can only be changed by a subsequent written agreement signed by the Vice President of Company."

210.    In the PIIA, Meredith agrees that "my obligations under paragraphs 2, 3 and 4 of this Agreement shall continue in effect after termination of my employment, regardless of the reason or reasons for termination, and whether such termination is voluntary or involuntary on my part, and that Company is entitled to communicate my obligations under this Agreement to any future employer or potential employer of mine. My obligations under paragraphs 2 and 3 also shall be binding upon my heirs, executors, assigns, and administrators and shall inure to the benefit of Company, it subsidiaries, successors and assigns."

211.    In the PIIA, Meredith states "I also understand that any breach of this Agreement will cause irreparable harm to Company for which damages would not be an adequate remedy, and, therefore, Company will be entitled to injunctive relief with respect thereto in addition to any other remedies and without any requirement to post bond."

212.    Concurrent with the PIIA, Meredith (individually) and Chart (corporately, by and through Meredith, as the Manager of Chart) entered into the TAA with VCSI.

213.    For the purposes of the TAA, Meredith and Chart were jointly referred to as "Developer".

214.     In the TAA, Developer assigns to VCSI all intellectual property rights, stating that "Developer hereby assigns to the Company [VCSI] exclusively throughout the world all right, title and interest (whether or not now existing) in (i) the subject matter referred to in Exhibit A [of the TAA] ("Technology"), (ii) all precursors, portions and work in progress with respect thereto and all inventions, works of authorship, mask works, technology, information, know-how, materials and tools relating thereto or to the development, production, use, support or maintenance thereof and (iii) all copyrights, patent rights, trade secret rights, trademark rights, mask works rights, sui generis database rights and other intellectual property rights and all business, contract rights and goodwill in, incorporated or embodied in, used to develop or produce or use, or related to any of the foregoing ((i), (ii) and (iii) are collectively "Intellectual Property")."

215.     The Technology assigned to VCSI from Developer, included: "All technology, know-how, information, intellectual property and other materials for or relevant to Virtual Chart Solutions, LLC [Chart], including, but not limited to, all business plans, technical plans, specifications, templates, demonstration versions, equipment, software, devices, methods, apparatus, product designs, trademarks or logos relevant to the foregoing.

216.     VCSI performed its obligations under the PIIA – having employed Meredith from May 18, 2013 through February 11, 2015.

217.     VCSI performed its obligations under the TAA – having provided Meredith (and Chart, collectively "Developer") with 49,000 shares of VCSI's Common Stock on May 18, 2013.

218.     Meredith breached, and continues to breach, paragraphs 1-5, and 7, of the PIIA, and paragraphs 1, 4 and 5 of the TAA, by: engaging in activity that was competitive with the business or demonstrably anticipated business of VCSI; assisting any other persons and organizations in competing or in preparing to compete with any business or demonstrably anticipated business of VCSI; failing to maintain the confidentiality of VCSI's trade secret and proprietary information; using VCSI's intellectual property and proprietary information for Meredith's own benefit, and the benefit of other individuals and businesses outside of VCSI; disclosing the identity of VCSI's customers/clients to third parties; and failing to observe and comply with post-employment prohibitions on his use of VCSI's proprietary information.

219.    On July 11, 2014, Meredith formed Network as a Texas limited liability company – in direct conflict and competition with VCSI.

220.    In order to secure the July 11th formation of Network, Meredith filed a Form 509 – Consent to Use Similar Name – with the Texas Secretary of State on behalf of VCSI, without the authority from or consent of VCSI.

221.    Meredith provided Network with access to intellectual property and proprietary information belonging to VCSI, thereby assisting Network in competing with VCSI, and thereby illegally and unjustly enriching Network.

222.    Meredith provided Chart with access to intellectual property and proprietary information belonging to VCSI, thereby assisting Chart in competing with VCSI, and thereby illegally and unjustly enriching Chart.

223.    Upon information and belief, Meredith provided MCT with access to intellectual property and proprietary information belonging to VCSI, thereby assisting MCT in competing with VCSI, and thereby illegally and unjustly enriching MCT.

224.    Upon information and belief, Meredith provided Davis with access to intellectual property and proprietary information belonging to VCSI, thereby assisting Davis and Network in competing with VCSI, and thereby illegally and unjustly enriching Davis and Network.

225.    Upon information and belief, Meredith provided Surgical with access to intellectual property and proprietary information belonging to VCSI, thereby assisting Surgical in competing with VCSI, and thereby illegally and unjustly enriching Surgical.

226.    As a result of Meredith's multiple and repeated breaches of his contractual obligations to VCSI, VCSI has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. VCSI is informed and believes, and on that basis avers, that unless enjoined and restrained by this Court, Meredith continues – and will continue – to breach his contractual duties to VCSI. VCSI is entitled to injunctive relief to restrain and enjoin Meredith's continuing unlawful conduct.

## COUNT XII
## MEREDITH'S TORTIOUS INTERFERENCE WITH VCSI'S CONTRACTUAL RELATIONS UNDER TEXAS LAW

227.    Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 226, inclusive, and incorporates them by reference herein.

228.    The acts and conduct of Meredith as alleged above in this complaint constitute tortious interference with VCSI's contractual relations, pursuant to Texas law.

229.    Repeatedly while working as an employee of VCSI, Meredith knowingly and intentionally provided MCT with access to trade secret and proprietary information belonging to VCSI that enabled MCT to develop business leads and establish contacts in competition with VCSI, and at VCSI's expense.

230.    On February 18, 2015, after Meredith resigned from VCSI, Meredith sent an email to a client of VCSI – DFW Injury Clinic – making tortious allegations about VCSI. Meredith's email stated that DFW Injury Clinic was locked out of its VCSI-based systems – which was untrue. Meredith's email advised DFW Injury Clinic to demand its data "intellectual property" from VCSI. Meredith's email to DFW Injury Clinic also solicited a contact list of all Attorneys associated with VCSI's contract with DFW Injury Clinic, which was/is proprietary information of VCSI's.

231.    On February 19, 2015, after Meredith resigned from VCSI, Meredith sent an email to a client of VCSI – Ohio Surgery Center – making tortious allegations about VCSI. Meredith's email stated that Ohio Surgery Center was locked out of its VCSI-based systems – which was untrue. Meredith's email advised Ohio Surgery Center to demand its data "intellectual property" from VCSI. Meredith's email to Ohio Surgery Center also solicited a contact list of all Medical Facilities associated with VCSI's contract with Ohio Surgery Center, which was/is proprietary information of VCSI's.

232.    As a result of Meredith's multiple tortious interferences in VCSI's contractual relationships,  VCSI sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. VCSI is informed and believes, and on that basis avers, that unless enjoined and restrained by this Court, Meredith continues –

and will continue – to tortuously interfere with VCSI's contractual relationships. VCSI is entitled to injunctive relief to restrain and enjoin Meredith's continuing unlawful conduct.

## COUNT XIII
## DEFENDANTS' MISAPPROPRIATION OF VCSI'S TRADE SECRETS AND PROPRIETARY INFORMATION UNDER TEXAS LAW

233.    Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 232, inclusive, and incorporates them by reference herein.

234.    The acts and conduct of the Defendants as alleged above in this complaint constitute misappropriation of VCSI trade secrets and proprietary information, pursuant to Texas law.

235.    Meredith not only failed to maintain the confidentiality of VCSI's trade secret and proprietary information, he affirmatively provided VCSI's intellectual property, trade secret, and proprietary information to the remaining Defendants for his own benefit, and to the benefit of those other Defendants. Meredith disclosed the identity of VCSI's customers/clients to the other Defendants. Defendants knew, or should have reasonably suspected, that the information and access provided to them by Meredith was proprietary to VCSI, or VCSI trade secret material.

236.    Meredith provided Network with access to intellectual property and proprietary information belonging to VCSI. Meredith and Network thereby misappropriated VCSI's trade secret and proprietary information – illegally and unjustly enriching Meredith and Network.

237.    Meredith provided Chart with access to intellectual property and proprietary information belonging to VCSI. Meredith and Chart thereby misappropriated VCSI's trade secret and proprietary information – illegally and unjustly enriching Meredith and Chart.

238.    Meredith provided Davis with access to intellectual property and proprietary information belonging to VCSI. Meredith and Davis thereby misappropriated VCSI's trade secret and proprietary information – illegally and unjustly enriching Meredith and Davis.

239.    Meredith provided MCT with access to intellectual property and proprietary information belonging to VCSI. Meredith and MCT thereby misappropriated VCSI's trade secret and proprietary information – illegally and unjustly enriching Meredith and MCT.

240.    Upon information and belief, Meredith provided Surgical with access to intellectual property and proprietary information belonging to VCSI. Meredith and Surgical thereby misappropriated VCSI's trade secret and proprietary information – illegally and unjustly enriching Meredith and Surgical.

241.    As a result of the Defendants' multiple and repeated misappropriation of VCSI's trade secret and proprietary information, VCSI has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. VCSI is informed and believes, and on that basis avers, that unless enjoined and restrained by this Court, Defendants continue – and will continue – to profit from their misappropriation. VCSI is entitled to injunctive relief to restrain and enjoin Defendants' continuing unlawful conduct.

## COUNT XIV
## DEFENDANTS' UNFAIR COMPETITION UNDER TEXAS LAW

242.    Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 241, inclusive, and incorporates them by reference herein.

243.    The acts and conduct of the Defendants as alleged above in this complaint constitute unfair competition pursuant to Texas law.

244.    As alleged above, Defendants have misappropriated VCSI's trade secret and proprietary information.

245.    As alleged above, Defendants have violated VCSI's copyrights, and misappropriated and use VCSI Copyright Materials in their business without permission from, or payment to, VCSI.

246.    Defendants' acts and conduct as alleged above have been used in direct competition with VCSI.

247.    Defendants' acts and conduct as alleged above have damaged and will continue to damage VCSI, and have resulted in an illicit gain of profit and marketplace good will to Defendants in amounts that are unknown at the present time.

248.    As a direct result of the Defendants' continuous and ongoing acts of unfair competition, VCSI has sustained and will continue to sustain substantial, immediate, and

irreparable injury, for which there is no adequate remedy at law. VCSI is informed and believes, and on that basis avers, that unless enjoined and restrained by this Court, Defendants continue – and will continue – to profit from their unfair competition. VCSI is entitled to injunctive relief to restrain and enjoin Defendants' continuing unlawful conduct.

## COUNT XV
## IMPOSITION OF A CONSTRUCTIVE TRUST UPON ILLEGAL PROFITS AGAINST DEFENDANTS

249.    Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 248, inclusive, and incorporates them by reference herein.

250.    Defendants' conduct constitutes deceptive, fraudulent, and wrongful conduct in the nature of breaching fiduciary relationships and duties, misappropriating VCSI proprietary information and intellectual property, and using those misappropriated materials for their own benefit and profit without authorization or approval by VCSI.

251.    By virtue of Defendants' wrongful conduct, Defendants have illegally received money and profits that rightfully belong to VCSI.

252.    Upon information and belief, Defendants hold the illegally received money and profits in the form of bank accounts, real property, or personal property that can be located and traced.

253.    Defendants hold the money and profits they have illegally received as constructive trustees for the benefit of VCSI.

## COUNT XVI
## ACCOUNTING AGAINST DEFENDANTS

254.    Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 253, inclusive, and incorporates them by reference herein.

255.    VCSI is entitled to, pursuant to 17 U.S.C. § 504, to recover any and all profits of Defendants that are attributable to their acts of infringement.

256.    VCSI is also entitled to, pursuant to 17 U.S.C. § 504, to actual damages or statutory damages sustained by Defendants' acts of infringement.

257.    The amount of money due from Defendants to VCSI is unknown to VCSI, and cannot be ascertained without a detailed accounting by Defendants of the precise number of systems utilizing infringing material used, offered for sale, sold, offered for license, licensed, offered for distribution, distributed, modified and/or revised by Defendants, and a detailed accounting of the initial time and duration of each such infringement.

## DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment as follows:

1)    That this Court enter a judgment against Defendants as indicated below:

a.    that Defendants have willfully infringed VCSI's rights in the following federally registered copyrights, in violation of 17 U.S.C. § 501:

i.    TXu 2-038-670, *et seq*. ("VCSI Copyright Materials");

b.    that Meredith has willfully infringed – by means of contributory infringement – VCSI' rights in the following federally registered copyrights, in violation of 17 U.S.C. § 501:

i.    TXu 2-038-670, *et seq*. ("VCSI Copyright Materials");

c.    that Meredith has willfully infringed – by means of vicarious infringement – VCSI' rights in the following federally registered copyrights, in violation of 17 U.S.C. § 501:

i.    TXu 2-038-670, *et seq*. ("VCSI Copyright Materials");

d.    that Defendants have willfully committed and are committing misappropriation of VCSI's intellectual property, trade secrets and proprietary information, in violation of Texas law;

e.    that Defendants have willfully engaged and are engaging in unfair competition, in violation of Texas law; and

f.    that Defendants have otherwise injured the business reputation and business of VCSI by the acts and conduct set forth in this Complaint.

2)      That this Court issue preliminary and permanent injunctive relief against Defendants, and that Defendants, their directors, principals, officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendants, be enjoined and restrained from:

a.      imitating, copying, or making any other infringing use or infringing distribution of the software programs, components and/ or items now or hereafter protected by the following copyright Certificate Registration Nos.:

i.   TXu 2-038-670, *et seq*. ("VCSI Copyright Materials");

b.      manufacturing, assembling, producing, distributing, offering for distribution, operating, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any software program, component, and/or item bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of any of VCSI's registered copyrights including, but not limited to, the Copyright Registration Numbers listed in Section (2)(a) above;

c.      using any simulation, reproduction, counterfeit, copy, or colorable imitation of VCSI 's intellectual property or registered copyrights including, but not limited to the Copyright Registration Numbers listed in Section (2)(a) above, in connection with the manufacture, assembly, production, operation, hosting, support, distribution, offering for distribution, circulation, sale, offering for sale, import, advertisement, promotion, or display of any software program, component, and/or item not authorized or licensed by VCSI;

d.      engaging in any other activity constituting an infringement of any of VCSI's intellectual property and/or copyrights, or of VCSI's rights in, or right to use or to exploit, its own proprietary information, trade secrets, and/or copyrights; and

e.      assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (d) above.

3)      That this Court enter an order of impoundment pursuant to 17 U.S.C. §§ 503 and 509(a), and 28 U.S.C. § 1651(a) impounding all counterfeit and infringing copies of VCSI copyrights and/or proprietary materials, and any related item, including business records, that is in Defendants' possession or under their control;

4)      That this Court enter an order declaring that Defendants hold in trust, as constructive trustees for the benefit of VCSI, their illegal profits obtained from their use and

[44]

distribution of software infringing VCSI's copyrights, and requiring Defendants to provide VCSI a full and complete accounting of all amounts due and owing to VCSI as a result of Defendants' illegal activities.

5)      That this Court order Defendants to pay VCSI's general, special, actual, and statutory damages as follows:

a.      VCSI's damages and Defendants' profits pursuant to 17 U.S.C. § 504(b), or alternatively, enhanced statutory damages pursuant to 17 U.S.C. § 504(c), and 17 U.S.C. § 504(c)(2), for Defendants' willful infringement of VCSI's copyrights;

b.      VCSI's damages and Defendants' profits pursuant to Texas common law.

6)      That this Court order Defendants to pay to VCSI both the costs of this action and the reasonable attorneys' fees incurred by it in prosecuting this action; and

7)      That this Court grant to VCSI such other and additional relief as is just and proper.


Dated:  August 4, 2017                    Respectfully Submitted,

By:  /s/ Ronald W. Burns
        Ronald W. Burns
        Texas State Bar No. 24031903
        972-632-9009
        rwb@sbaitilaw.com
        Mazin A. Sbaiti
        Texas State Bar No. 24058096
        214-432-2899
        mas@sbaitilaw.com
        Sbaiti & Co., PLLC
        1201 Elm Street, Suite 4010
        Dallas, Texas 75270

        **ATTORNEYS FOR PLAINTIFF**
        **VIRTUAL CHART SOLUTIONS I, INC.**