# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| VIRTUAL CHART SOLUTIONS I, INC. | § | |
| | § | |
| V. | § | Civil Action No. 4:17cv546 |
| | § | Judge Mazzant/Magistrate Judge Craven |
| BRIAN LEE MEREDITH, ET AL. | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

The above-referenced cause of action has been referred to the undersigned United States

Magistrate Judge in accordance with 28 U.S.C. § 636.  Before the Court are the following:

> **The Surgical Notes Defendants' Proposed Bill of Costs and Brief in Support of an Award of Attorney Fees Pursuant to 17 U.S.C. § 505 (Docket Entry # 192); and**
>
> **Defendant MRI Centers of Texas, LLC's Proposed Bill of Costs and Brief in Support of Award of Attorney's Fees (Docket Entry # 208).**

The Court, having considered the relevant briefing, recommends the Surgical Notes Defendants and

Defendant MRI Centers of Texas, LLC be awarded attorneys' fees (but not in the full amounts

requested) and also be awarded the full amount of costs requested.

## I. BACKGROUND

### A.      Factual background

In its Second Amended Complaint ("SAC") filed April 3, 2018, Virtual Chart Solutions I,

Inc. ("Plaintiff" or "VCSI") alleged copyright infringement, inducement to infringe copyright,

contributory copyright infringement, vicarious copyright infringement, breach of fiduciary duty,

breach of contract, misappropriation of trade secrets, unfair competition, and accounting against the

following defendants: (1) Brian Lee Meredith; Tracie Dawn Davis; Virtual Chart Network,

LLC; virtualasc.com (d.b.a. myPIcase.com); Virtual Chart Solutions, LLC; and Lone Star VCS, LLC (together, the "Meredith Defendants"); (2) Surgical Notes, Inc.; Surgical Notes MDP, LP; Surgical Notes GP, LLC; and Surgical Notes RCM, LLC (together, the "Surgical Notes Defendants"); and (3) MRI Centers of Texas, LLC ("MCT").[1] Plaintiff alleges it employed Brian Meredith  from May 2013 until February 19, 2015. Docket Entry # 92, ¶¶ 19, 21, 64. According to Plaintiff, on August 30, 2013, Meredith entered into a Proprietary Information and Inventions Agreement and a Technology Assignment Agreement ("TAA") (collectively, the "Agreements") with Plaintiff wherein Meredith assigned all existing intellectual property rights he possessed to Plaintiff, including his rights to software and all related methods. *Id*.,  ¶¶ 24, 37, 49.

In the SAC, Plaintiff alleges all "such copyrights that VCSI owns all rights and interest in, and title to – including the literal sources code underlying the Billing, vImage, VCSImages, VCN, VCS, vChiro, and VCS Web modules – as recorded with the United States Copyright Office in Registration Nos. TXu 2-038-670, et seq. ('VCSI Copyright Materials')." *Id*., ¶ 51. Plaintiff alleges that during Meredith's employment with VCSI, he gave Defendant access to and use of Plaintiff's proprietary information and copyrighted materials.  *Id*., ¶¶ 60–62, 75, 179–191. Specifically, Plaintiff argues Meredith provided Defendant source code in violation of Meredith's agreements with VCSI *Id*., ¶¶ 60–62, 75, 179–191. According to Plaintiff, upon information and belief, Defendant "reproduced, reproduces, adapted, adapts, offered, offers, installed, installs, distributed and distributes unauthorized copies of VCSI Copyright Materials;" "used, uses, operated, operates,

---

[1] On June 11, 2018, the Court issued an Order of Dismissal, dismissing with prejudice all claims and counterclaims asserted in this case by and between Plaintiff and defendant Mason James Distribution, LLC. *See* Docket Entry # 107. On March 1, 2019, the Court entered an Order of Dismissal, dismissing with prejudice Plaintiff's claims against the Meredith Defendants. *See* Docket Entry # 172.

offered, offers, installed, installs, distributed and distributes unauthorized copies of VCSI Copyright Materials through MCT's operations;" and "[t]he user interface and database structures of the MCT operations actually utilize(d) infringing copies of VCSI Copyright Materials." *Id.*, ¶¶ 182–84. Plaintiff sought injunctive relief and monetary damages for the alleged infringement.

**B.    Procedural background**

On July 16, 2018, Defendant MCT filed its first motion for summary judgment, arguing Plaintiff's claims for trade secret misappropriation, unfair competition, and for statutory damages or attorney's fees in its copyright claims should be dismissed.  Docket Entry #114. In its response in opposition, Plaintiff dismissed without prejudice the unfair competition claims and claims for statutory damages and attorneys' fees under the Copyright Act, leaving only the trade secret misappropriation claim the subject of Defendant's first motion for summary judgment.  Docket Entry #121 at p. 3. The Magistrate Judge entered a Report and Recommendation on Defendant's first motion or summary judgment on January 2, 2019, recommending the motion be granted and Plaintiff's trade secret misappropriation claim be dismissed with prejudice. Docket Entry #138. The Court adopted the January 2 Report and Recommendation on February 5, 2019, leaving only Plaintiff's copyright infringement claim against MCT.  Docket Entry #149.

On December 13, 2018, Defendant filed a motion for leave to file a second motion for summary judgment, asserting Plaintiff's copyright infringement claim be dismissed. Docket Entry #135. Because this motion was filed outside the dispositive motion deadline, the undersigned denied Defendant's motion. Docket Entry #143. However, during the Final Pretrial Conference before the undersigned on March 8, 2019, the Court reinstated Defendant's second motion for summary judgment (Docket Entry # 136) for the undersigned to consider.

Meanwhile, on January 28, 2019, Plaintiff filed a partially unopposed motion seeking to dismiss the Surgical Notes Defendants under Federal Rule of Civil Procedure 41(a)(2) with prejudice, with all parties bearing costs and fees incurred by same.  According to the motion, the Surgical Notes Defendants had indicated they did not oppose the dismissal, but they did oppose the part of the motion allocating costs and fees.  Docket Entry # 146.  The Surgical Notes Defendants filed a response to Plaintiff's motion.[2]  Docket Entry # 166.  The Surgical Notes Defendants did not oppose dismissal with prejudice, but asserted Plaintiff's dismissal did not support a denial of attorney's fees "where, as here, no basis in law or in fact exists for Plaintiff's initial filing of the case." *Id.* at p. 2.  The Surgical Notes Defendants requested the Court "not reward Plaintiff's failure to properly investigate and prosecute its claims against Surgical Notes, especially in light of the fee-shifting provision of 17 U.S.C. § 505, as well as Plaintiff's lack of meaningful pursuit of the truth in this case."  *Id*. at p. 3.

On March 1, 2019, District Judge Mazzant entered an Order of Dismissal of Surgical Notes Defendants.  Docket Entry # 176.  In that order, Judge Mazzant granted Plaintiff's motion to dismiss the Surgical Notes Defendants with prejudice, reserving the issue of whether the Surgical Notes Defendants are entitled to attorneys' fees, and if so, in what amount.  The Court stated it would allow the Surgical Notes Defendants to file a proposed bill of costs pursuant to this Court's Local Rule CV-54.

On June 17, 2019, the undersigned recommended Defendant MCT's reinstated motion for summary judgment be granted and that Plaintiff's copyright infringement claims against MCT be

---

[2] The Court notes MCT also filed a response to Plaintiff's motion, asserting the Surgical Notes Defendants are properly considered prevailing parties under the Copyright Act if the Court approves dismissal with prejudice of the Surgical Notes Defendants. Docket Entry # 155 at p. 3.

dismissed with prejudice.[3]  Docket Entry # 203.  The undersigned did not make a recommendation as to MCT's Request for Costs and Attorney's Fees, stating the issue should be addressed following the District Judge's consideration of the June 17, 2019 Report and Recommendation and at the same time as the Surgical Notes Defendants' Proposed Bill of Costs and Brief in support of an Award of Attorney Fees Pursuant to 17 U.S.C. § 505.  *Id.* at p. 23, n. 5.

District Judge Mazzant adopted the findings and conclusions of the undersigned on August 20, 2019, granting MCT's motion for summary judgment as to Plaintiff's copyright infringement claim and leaving the contested issues of attorney's fees and costs.  Docket Entry # 207.  Judge Mazzant instructed MCT to file a proposed bill of costs and brief in support of an award of attorney's fees pursuant to 17 U.S.C. § 505, for consideration at the same time as the Surgical Notes Defendants' proposed bill of costs.  *Id.* at p. 18.

## II. PROPOSED BILL OF COSTS

On March 29, 2019, the Surgical Notes Defendants filed their Proposed Bill of Costs and Brief in Support, requesting fees and costs in the total amount of $ 162,810.60. Docket Entry # 192 at p. 12.  In support of the reasonable number of hours expended by Surgical Notes' counsel, as well as the reasonable hourly rates, the Surgical Notes Defendants offer the declaration of Rocky Schwartz, with attorney invoices and time records attached.

On August 30, 2019, MCT filed its Proposed Bill of Costs and Brief in Support, requesting an award of costs and fees in the amount of $243,519.69.  In support of the reasonable number of

---

[3] In its reinstated motion for summary judgment, Defendant argued it was entitled to judgment on Plaintiff's copyright infringement claim because Plaintiff judicially admitted in its briefing on a prior motion that its failure to designate an expert or disclose expert testimony prohibits Plaintiff from providing any evidence on copyright infringement from which a factfinder could reasonably decide in its favor. Docket Entry #136 at p. 1. Defendant further asserted Plaintiff could not prove substantial similarity between its copyrighted work and the alleged infringing copy. *Id.* at p. 5.

hours expended by MCT's counsel, as well as the reasonable hourly rates, MCT offers the declaration of James M. Stanton, with attorney invoices and time records attached.

### III. APPLICABLE LAW

**A.      Attorney's fees**

The Copyright Act provides that a district court "may. . . award a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505.  "It thus authorizes fee-shifting, but without specifying standards that courts should adopt, or guideposts they should use, in determining when such awards are appropriate." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1984–85, 195 L. Ed. 2d 368 (2016).  In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), the Supreme Court considered the standards for attorney's fee awards under the Copyright Act.

The Court rejected a "dual" standard of assessing attorney's fees under which "prevailing plaintiffs are generally awarded attorney's fees as a matter of course, while prevailing defendants must show that the original suit was frivolous or brought in bad faith."  *Id.* at 520–21. Instead, the Court adopted an "'evenhanded' approach in which no distinction is made between prevailing plaintiffs and prevailing defendants." *Id.* at 521. The Court explained that "[b]ecause copyright law ultimately serves the purpose of enriching the general public through access to creative works . . . defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Id.* at 527. The Court clarified, however, that it was not adopting the "British Rule," which would require awarding "attorney's fees as a matter of course, absent exceptional circumstances." *Id.* at 533. Instead, "attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." *Id.* at 534.

"There is no precise rule or formula for making these determinations," but instead equitable discretion should be exercised "in light of the considerations we have identified." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436–437, 103 S.Ct. 1933, 1941–1942, 103 S.Ct. 1933 (1983)). A district court must make a particularized, case-by-case assessment. *Kirtsaeng*, 136 S. Ct. 1979, 1985 (citing *Fogerty*, 510 U.S. at 533). Additionally, the district court "may not treat prevailing plaintiffs and prevailing defendants any differently." *Kirtsaeng*, 136 S. Ct. at 1985 (citing *Fogerty*, 510 U.S. at 527). Fee awards in copyright cases should "encourage the types of lawsuits that promote" the purpose of the Copyright Act, which is to "enrich the general public through access to creative works." *Kirtsaeng*, 136 S. Ct. at 1986 (citation omitted). This requires a court to strike a "balance between . . . encouraging and rewarding authors' creations while also enabling others to build on that work." *Id.*

Accordingly, in determining whether an award of fees is appropriate, to either a prevailing plaintiff or defendant, a court should give substantial weight to the objective reasonableness of the party's position. *Id.* This standard "encourages parties with strong legal positions to stand on their rights and deters those with weak ones from proceeding with litigation." *Id.* "[W]hen a person . . . has an unreasonable litigating position, the likelihood that he will have to pay two sets of fees discourages legal action." *Id.* at 1986-87. Applying these principles to plaintiffs, the Court observed that a "copyright holder with no reasonable infringement claim has good reason not to bring suit in the first instance (knowing he cannot force a settlement and will have to proceed to judgment)." *McDermott v. Monday Monday, LLC*, No. 17CV9230 (DLC), 2018 WL 1033240, at *2 (S.D.N.Y. Feb. 22, 2018), *motion for relief from judgment denied*, No. 17CV9230 (DLC), 2018 WL 5312903 (S.D.N.Y. Oct. 26, 2018) (quoting *Kirtsaeng*, 136 S. Ct. at 1987).

7

Although objective reasonableness is an important factor in assessing fee applications, it is not the controlling one. *Kirtsaeng*, 136 S. Ct. at 1988. The district court should also "take into account a range of considerations beyond the reasonableness of litigating positions." *Id.* The "other circumstances" include "frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1985 (quoting *Fogerty*, 510 U.S. at 534 n.19).

## B.    Costs

Federal Rule of Civil Procedure 54(d)(1) independently authorizes district courts to award costs to prevailing parties unless a statute or rule precludes it. *Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, LP*, No. CV H-14-1903, 2018 WL 2048896, at *12 (S.D. Tex. May 2, 2018) (citing *Marx v. General Revenue Corp.*, 133 S. Ct. 1166, 1174 & n.5 (2013)). "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). Rule 54(d) gives courts discretion to award costs—other than attorney's fees—to prevailing parties based on the circumstances of the case, but "does not *require* courts to award costs to prevailing [parties]." *Id.* at 1178 n.9 (emphasis in original).

Costs are limited by 28 U.S.C. § 1920, which provides that the following expenses may be taxed as costs:

1) Fees of the clerk and marshal;

2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

3) Fees and disbursements for printing and witnesses;

8

4) Fees for exemplification and the costs of making copies of any material where the copies are necessarily obtained for use in the case;

5) Docket fees under section 1923 of this title;

6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

*Hacienda Records, LP v. Ramos*, No. 2:14-CV-19, 2019 WL 93306, at *9 (S.D. Tex. Jan. 3, 2019)

(quoting 28 U.S.C. § 1920).

The Supreme Court has indicated that courts may only award costs that are articulated in §

1920 absent explicit statutory or contractual authorization to the contrary. *Hacienda Records*, 2019

WL 93306, at *9 (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 444–45 (1987); also

citing *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001)). Here, that

"explicit statutory authority" is found in 17 U.S.C. § 505, which specifically applies to copyright

cases. *Hacienda Records*, 2019 WL 93306, at *9 (citing *Guzman v. Hacienda Records*, 2015 WL

4920058, at *1 (S.D. Tex. Aug. 18, 2015) (citing *Susan Wakeen Doll Co. v. Ashton Drake Galleries*,

272 F.3d 441, 458 (7th Cir. 2001) ("[A]ny award of fees and non-taxable costs must come through

[section 505], and not through the general cost provisions of 28 U.S.C. § 1920."))).

 "In stark contrast to the list of taxable costs in section 1920, the copyright statute contains

no such list and just refers to 'full costs.'" *Hacienda Records*, 2019 WL 93306, at *9 (quoting

*Guzman*, 2015 WL 4920058, at *2).  Circuit courts have been split on whether the reference to "full

costs" in § 505 is limited to costs enumerated in § 1920 or is broader in scope. *Hacienda Records*,

2019 WL 93306, at *10 (comparing cases). Recently, the United States Supreme Court held that "§

505's authorization for the award of 'full costs' . . . covers only the six categories specified in the

general costs statute, codified at §§ 1821 and 1920." *UM Corp. v. Tsuburaya Prods. Co.*, No. 18-55604, 2019 WL 6610042, at *2 (9th Cir. Dec. 5, 2019) (quoting *Rimini Street, Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 876 (2019)).

## IV. ATTORNEYS' FEES

### A.      The legal standard

### 1.      Threshold inquiry

Whether a party is the prevailing party is a threshold inquiry for an award of costs and attorney's fees. *Energy Intelligence*, 2018 WL 2048896, at *13 (citing *Farrar v. Hobby*, 113 S. Ct. 566 (1992) (bifurcating the legal determination of prevailing party status from the discretionary determination of whether an award of attorney's fees is reasonable); also citing *Howard v. Weston*, 354 Fed. Appx. 75, 77 (5th Cir. 2009) (per curiam) ("To be awarded attorney's fees and costs under Section 505 of the Copyright Act and Federal Rule of Civil Procedure 54, [one] must be a prevailing party.")). Once a court has made the prevailing party determination, the court must determine what, if any, amount of attorney's fees is reasonable. *Energy Intelligence*, 2018 WL 2048896, at *13 (citing *Farrar*, 113 S. Ct. at 572 (citing *Hensley*, 103 S. Ct. at 1939)).

### 2.      The Lodestar method

If the court determines that the prevailing party should receive attorney's fees, the court must use the "lodestar" method to determine the reasonableness of the requested fees. *Spear Mktg., Inc. v. Bancorpsouth Bank*, No. 3:12-CV-3583-B, 2016 WL 193586, at *3 (N.D. Tex. Jan. 14, 2016), *aff'd*, 844 F.3d 464 (5th Cir. 2016) (citing *Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 380 (5th Cir. 2010)). To determine the lodestar, the court must determine the reasonable number of hours expended by the attorney and the reasonable hourly rate for the attorney. The court then multiplies

10

the number of hours by the hourly rate. *Hacienda Records*, 2019 WL 93306, at *3 (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995)). The lodestar is intended to reflect "the prevailing market rates in the relevant community." *Hacienda Records*, 2019 WL 93306, at *3 (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010)). It "roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Id*. A reasonable fee is one that is sufficient to induce a capable attorney to undertake the representation of a meritorious case, but is not intended to produce windfalls to attorneys. *Hacienda Records*, 2019 WL 93306, at *3 (citing *Perdue*, 559 U.S. at 552). An attorney's requested hourly rate is prima facie reasonable when he or she requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates, and the rate is not contested. *Hacienda Records*, 2019 WL 93306, at *3 (citing *Kellstrom*, 50 F.3d at 328).

There is a strong presumption in favor of the lodestar amount, but it may be adjusted up or down based on twelve factors set out in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717–19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989). *Hacienda Records*, 2019 WL 93306, at *3 (citing *Saizan v. Delta Concrete Prod. Co., Inc*., 448 F.3d 795, 800 (5th Cir. 2006)). The factors considered in *Johnson* include: (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorney;

11

(10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hacienda Records*, 2019 WL 93306, at *3 (citing *Johnson*, 488 F.2d at 717–19).

"[T]he lodestar figure includes most, if not all, of the 'relevant factors' constituting a reasonable attorney's fee." *Hacienda Records*, 2019 WL 93306, at *3 (quoting *Perdue*, 559 U.S. at 553). Accordingly, enhancements based on the *Johnson* factors are rare but may be awarded in exceptional circumstances. *Hacienda Records*, 2019 WL 93306, at *3 (citing *Perdue*, 559 U.S. at 552). An enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation. *Hacienda Records*, 2019 WL 93306, at *3 (citing *Perdue*, 559 U.S. at 553). Thus, the novelty and complexity of a case generally may not be used as a ground for enhancement because those factors presumably are reflected in the number of billable hours recorded by the attorney. *Id.* In addition, time limitations and the preclusion of other employment by the attorney generally are subsumed in the lodestar calculation. *Hacienda Records*, 2019 WL 93306, at *3 (citing *Heidtman v. County of El Paso*, 171 F.3d 1038, 1043–44 (5th Cir. 1999)).

**B.      Analysis**

**1.      Prevailing parties**

In their separate proposed bill of costs and briefs in support, the Surgical Notes Defendants and MCT seek an award of costs and attorneys' fees under 17 U.S.C. § 505, which allows an award of "a reasonable attorney's fee" to the "prevailing party" as part of the costs in a copyright infringement suit. As noted above, § 505 supplements Federal Rule of civil Procedure 54(d)(1), which allows a "prevailing party" to receive an award of costs other than attorneys' fees, "[u]nless a federal statute . . .  provides otherwise."  It is undisputed MCT is a prevailing party. However,

12

Plaintiff disputes whether Surgical Notes is a "prevailing party" in this action. *See* Docket Entry # 195 at pp. 4-5.

Congress has included the term "prevailing party" in various fee-shifting statutes, and it has been the Supreme Court's approach to interpret the term in a consistent manner. *CRST Van Expedited, Inc. v. E.E.O.C.*, 136 S. Ct. 1642, 1646, 194 L. Ed. 2d 707 (2016) (citing *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 602–603, and n. 4, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001)). The Court has stated the "touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." *CRST Van Expedited, Inc.*, 136 S. Ct. at 1646 (quoting *Texas State Teachers Assn. v. Garland Independent School Dist.*, 489 U.S. 782, 792-93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). This change must be marked by "judicial imprimatur." *CRST Van Expedited, Inc.*, 136 S. Ct. at 1646 (quoting *Buckhannon*, 532 U.S. at 605, 121 S.Ct. 1835). The Court has explained that, when a plaintiff secures an "enforceable judgmen[t] on the merits" or a "court-ordered consent decre[e]," that plaintiff is the prevailing party because he has received a "judicially sanctioned change in the legal relationship of the parties." *CRST Van Expedited, Inc.*, 136 S. Ct. at 1646 (quoting *Buckhannon*, 532 U.S. at 604–605, 121 S.Ct. 1835).

In *CRST Van Expedited, Inc.*, the Supreme Court considered whether a defendant could be declared the prevailing party absent a judgment on the merits. *B.E. Tech., L.L.C. v. Facebook, Inc.*, 940 F.3d 675, 678 (Fed. Cir. 2019) (citing *CRST Van Expedited, Inc.*, 136 S. Ct. at 1651). The issue there presented itself in the context of Title VII of the Civil Rights Act of 1964, which provides that a court may allow the "prevailing party" a "reasonable attorney's fee." *B.E. Tech., L.L.C.*, 940 F.3d at 678 (citing *CRST Van Expedited, Inc.*, 136 S. Ct. at 1646 (quoting 42 U.S.C. § 2000e–5(k))).

13

CRST had obtained a dismissal of all of the claims against it, including 67 claims that were dismissed for failure to meet presuit obligations. *B.E. Tech., L.L.C.*, 940 F.3d at 678.

"The district court held that CRST was the prevailing party, but the Eighth Circuit vacated its decision, holding that, for CRST to be eligible for fees, there must have been a favorable judicial decision on the merits. The Eighth Circuit also commented that a case has not been decided on the merits if it was dismissed for lack of subject matter jurisdiction, on res judicata grounds, or based on the statute of limitations." *Id.* The Supreme Court disagreed, holding that a merits decision is not a prerequisite to a finding of prevailing party status. *Id.* The Court explained as follows:

> Common sense undermines the notion that a defendant cannot 'prevail' unless the relevant disposition is on the merits. Plaintiffs and defendants come to court with different objectives. A plaintiff seeks a material alteration in the legal relationship between the parties. A defendant seeks to prevent this alteration to the extent it is in the plaintiff's favor. The defendant, of course, might prefer a judgment vindicating its position regarding the substantive merits of the plaintiff's allegations. The defendant has, however, fulfilled its primary objective whenever the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision. The defendant may prevail even if the court's final judgment rejects the plaintiff's claim for a nonmerits reason.

*CRST Van Expedited, Inc.*, 136 S. Ct. at 1651. Accordingly, a defendant can be deemed a prevailing party even if the case is dismissed on procedural grounds rather than on the merits. *B.E. Tech., L.L.C.*, 940 F.3d at 679.

Although *CRST Van Expedited, Inc.* considered the fee-shifting provision of Title VII, the Court explained there that "Congress has included the term 'prevailing party' in various fee-shifting statutes, and it has been the Court's approach to interpret the term in a consistent manner." *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1305 (Fed. Cir. 2018) (quoting *CRST Van Expedited, Inc.*, 136 S. Ct. at 1646 (citing *Buckhannon*, 532 U.S. at 602–03, 121 S.Ct. 1835)). According to the Federal

14

Circuit Court of Appeals, the relevant inquiry post-*CRST* is not limited to whether a defendant prevailed on the merits, but also considers whether the district court's decision—"a judicially sanctioned change in the legal relationship of the parties"—effects or rebuffs a plaintiff's attempt to effect a "material alteration in the legal relationship between the parties."  *Raniere*, 887 F.3d at 1305 (quoting *CRST Van Expedited, Inc.*, 136 S. Ct. at 1646, 1651).  The Federal Circuit in *Raniere* held that even without the benefit of *CRST*'s clarification of *Buckhannon*, the court still would conclude the district court did not err in finding the appellees were prevailing parties.  *Raniere*, 887 F.3d at 1307.  According to the court, the district court's dismissal with prejudice of Raniere's infringement suit was tantamount to a decision on the merits, making it sufficient to establish the appellees as prevailing parties. *Id.*

The Federal Circuit then addressed dismissals under Federal Rule of Civil Procedure 41 and stated "the Supreme Court has explained, in the context of discussing the differences between Rule 41(a) and Rule 41(b), that "an 'adjudication upon the merits' is the opposite of a 'dismissal *without prejudice*.'" *Id.* at 1308 (quoting *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001) (emphasis added in *Raniere*)). The *Raniere* court also cited a Fifth Circuit case for the same proposition.  *Raniere*, 887 F.3d at 1308 (citing *Schwarz v. Folloder*, 767 F.2d 125, 129–30 (5th Cir. 1985) ("Dismissal of an action with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties. An adjudication in favor of the defendants, by court or jury, can rise no higher than this." (quoting *Smoot v. Fox*, 340 F.2d 301, 303 (6th Cir. 1964)))).

Here, the Surgical Notes Defendants are prevailing parties for purposes of § 505 because the dismissal of Plaintiff's claims with prejudice pursuant to Rule 41(a)(2), on terms the Court

considered proper, rebuffed Plaintiff's copyright infringement claims—an attempt by Plaintiff to effect a material alteration in the legal relationship between the parties. *See Stragent LLC v. BMW of N. Am., LLC*, No. 6:16-CV-446-RWS-KNM, 2019 WL 3315460, at *4 (E.D. Tex. June 10, 2019), *report and recommendation adopted*, No. 6:16-CV-446-RWS-KNM, 2019 WL 3304703 (E.D. Tex. July 23, 2019) (citing *Raniere*, 887 F.3d at 1306 ("Appellees 'won' through the court's dismissal of Raniere's case with prejudice—they prevented Raniere from achieving a material alteration of the relationship between them, based on a decision marked by 'judicial imprimatur.'")).

Having determined both MCT and the Surgical Notes Defendants are "prevailing parties" for the purposes of § 505, the Court now considers whether MCT and/or the Surgical Notes Defendants are entitled to attorneys' fees and costs. Because an award of attorneys' fees is common, but not automatic, in copyright infringement cases, the Court will look to each of the *Fogerty* factors to determine whether attorneys' fees should be awarded in the present case. *Recursion Software, Inc. v. Double-Take Software, Inc.*, No. 4:10-CV-403, 2013 WL 12403528, at *2 (E.D. Tex. Jan. 3, 2013). Specifically, the Court will consider whether Plaintiff's suit was frivolous, improperly motivated, or objectively unreasonable, and whether granting fees advances considerations of compensation and deterrence. *Spear Mktg., Inc.*, 2016 WL 193586, at *6. The Court gives substantial weight to the objective unreasonableness of Plaintiff's position in connection with the allegations in the copyright infringement claim. *Farouk*, 2016 WL 6037231, at *2.

**2.     Entitlement to attorneys' fees**

***The Frivolousness and Objective Unreasonableness Factor***

The first factor for deciding whether to award attorneys' fees is the frivolousness of the claims and defenses. Because determinations of frivolousness often shade into determinations of

objective unreasonableness, the Court will consider these factors together. *YS Built, LLC v. Huang*, No. C15-1411-BJR, 2017 WL 1093207, at *2 (W.D. Wash. Mar. 23, 2017), *aff'd sub nom. YS Built LLC v. Ya Hsing Chiang Cind Huang*, 739 Fed. Appx. 414 (9th Cir. 2018). "'Objective unreasonableness' is generally used to describe claims that have no legal or factual support." *Viva Video, Inc. v. Cabrera*, 9 Fed. Appx. 77, 80 (2d Cir.2001). "[T]he imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act." *Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 122 (2d Cir.2001).

There is a difference between a suit that is "without merit" and one that is "patently frivolous." *Positive Black Talk v. Cash Money Records, Inc.*, 394 F.3d 357, 382 n. 23 (5th Cir. 2004), *abrogated on other grounds by Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010). In *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814 (5th Cir.1997), the Fifth Circuit upheld the district court's refusal to award attorneys' fees to the defendant despite finding on summary judgment the works in question "differed . . . in too many respects for a layman to conclude that the works were substantially similar." *Id*. at 816. The district court had concluded that the legal claim, "though ultimately not successful, was neither frivolous nor objectively unreasonable, either in its factual allegations or its legal undergirding." *Creations Unlimited, Inc. v. McCain*, 889 F.Supp. 952, 954 (S.D.Miss.1995). On the other hand, in *Coles v. Wonder*, 283 F.3d 798 (6th Cir.2002), the Sixth Circuit upheld the district court's award of attorney's fees to the defendant, affirming the conclusion that the plaintiffs' claims were objectively unreasonable because the legal issues were clear and no case law from any circuit supported the plaintiffs' position. *Id*. at 803.  A claim is more likely to be found frivolous or objectively unreasonable when the lack of

17

substance is obvious. *Recursion Software*, 2013 WL 12403528, at *3 (citing *Randolph v. Dimension Films*, 634 F.Supp.2d 779, 794 (S.D. Tex. 2009) (referring to case law that stated, "the plaintiffs' claims were objectively unreasonable because the legal issues were clear and there was no case law from any circuit that supported the plaintiffs' position.")).

The Surgical Notes Defendants assert frivolousness for the following reasons: (1) Plaintiff made no pre-suit investigation into the facts asserted; (2) Plaintiff did not engage in discovery against Surgical Notes after the lawsuit was initiated nor did Plaintiff respond to discovery requests made by Surgical Notes; (3) Plaintiff filed unfounded claims and then engaged in willful blindness "to shield itself from discovery facts that would require it (if it were acting in good faith), to dismiss claims against innocent parties;" (4) Plaintiff refused to accepts invitations to review Surgical notes' source code, and when it finally did review the source code more than one year after filing the lawsuit it still did not file a motion to dismiss for another four months; and (5) Plaintiff completely ignored Surgical Notes' offer of judgment to Plaintiff in mid-March 2018. Docket Entry # 192 at pp. 7-8.

According to Plaintiff, although it did not prevail, its claims were neither frivolous nor objectively unreasonable. Plaintiff relies on the Declaration of Grover "Bob" Shields, wherein he states Meredith told him on several occasions that he was "close friends with the principals of Surgical Notes." Shields Decl., ¶ 13. According to Shields, Meredith and Surgical Notes are represented by the same counsel in this lawsuit. *Id*. Shields further asserts Meredith's company Virtual Chart solutions sells the software at issue in this lawsuit alleged to be in violation of the copyright Act. *Id*., ¶¶ 17-18. Shields states the website for Virtual Chart solutions lists Surgical Notes as one of its "Partners," and Surgical Notes website listed offerings with functionalities

18

"nearly identical to those for the VCSI Copyrighted Materials at issue in this lawsuit." *Id.*, ¶¶ 15-20.

Shields asserts Plaintiff sued Surgical Notes "because of Meredith's lies and activities performing coding work for other businesses like MCT, selling them our code or licensing it to them without our knowledge and without compensating the company." *Id.*, ¶ 22. According to Plaintiff, that "Meredith and MCT have now admitted to getting the code from Meredith, and Plaintiff not receiving any compensation for it despite owning the intellectual property rights, should serve to underscore the highly likely inference that if Meredith gave the software to MCT and others, it gave it to Surgical Notes as well." Docket Entry # 195 at p. 6. Plaintiff argues there is no evidence that when it filed suit it should have been obvious to Plaintiff that it might end up dismissing its claims against Surgical Notes; to the contrary, "everything about the presentation of Surgical Notes' code and its very close affiliation with Meredith– which apparently continues to this day– renders the obvious conclusion that the code provided by Meredith belongs to Plaintiff. . . ." *Id.* at p. 7.

MCT argues Plaintiff's litigating position was objectively unreasonable because it had no factual support to prove the requisite element of actionable copying. Docket Entry # 208 at p. 3. According to MCT, in addition to lacking factual support, Plaintiff's litigating position lacked legal support. *Id.* at p. 4. Additionally, MCT contends Plaintiff "frivolously continued to pursue this lawsuit even when it understood or should have understood that it could not prevail." *Id.* at p. 5.

In response to MCT's assertions, Plaintiff argues its copyright claim was facially plausible when pleaded in its SAC and thus was not objectively unreasonable. In addition to its allegations, Plaintiff relies on April 24, 2018 deposition testimony of Brian Meredith in a Rule 202 action filed by MCT in Dallas County district court. Docket Entry # 209 at p. 7 (citing *In re Robert Shields*, DC-18-03216, 124th Judicial District, Dallas county, Texas). According to Plaintiff, in that deposition,

Meredith testified the computer code that MCT has is the "compiled code" of Plaintiff's source code. Docket Entry # 209 at p. 8 (citing Docket Entry # 193-2 at pp. 25, 33). Plaintiff argues the Court should also consider that Meredith already assigned his rights in the software to Plaintiff under the Agreements and was working for MCT on competitive software while he worked for Plaintiff in violation of the Proprietary Information and Inventions Agreement. Docket Entry # 209 at pp. 8-9. Plaintiff argues its "belief that Meredith secretly licensed the same software without Plaintiff being properly compensated through a license or otherwise was far from an unreasonable inference; it was completely justified." *Id.* at p. 9. Plaintiff further argues as follows:

> In short, MCT admitted that it had the 'same software' that Plaintiff purchased from Meredith. Meredith testified that he gave the software to MCT and that it was 'identical.' Therefore, no one can reasonably say from the outset that Plaintiff's case was frivolous, unreasonable, or without merit. The fact that (a) Plaintiff was unable to meet its expert deadline because MCT refused to produce its document, and then (b) Plaintiff attempted to show that an expert was unnecessary given the admissions of Mr. Meredith and MCT (albeit unsuccessful in front of this Court) does not convert the case from 'validly filed' to being a frivolous, meritless, or otherwise unreasonable one.

*Id.*

"Underpinning any award of attorneys' fees is 'the goal of vindicating the overriding purpose of the Copyright Act: to encourage the production of original literary, artistic, and musical expression for the public good.'" *Batiste v. Lewis*, No. CV 17-4435, 2019 WL 5401103, at *3 (E.D. La. Sept. 6, 2019), *report and recommendation adopted*, No. CV 17-4435, 2019 WL 5395316 (E.D. La. Oct. 21, 2019) (quoting *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 73 (1st Cir. 1998)). In rejecting arguments similar to those advanced by the plaintiff here, the court in *Batiste* noted a "showing of frivolity or bad faith is not required; rather, the prevailing party need only show that its opponent's copyright claims or defenses were 'objectively weak.'" *Id.* (quoting *Latin Am. Music Co.*

*v. Am. Soc'y of Composers Authors & Publishers*, 629 F.3d 262, 263 (1st Cir. 2010) (quoting *Garcia–Goyco v. Law Envtl. Consultants, Inc.*, 428 F.3d 14, 20 (1st Cir. 2005))).

In *Batiste*, the court dismissed the plaintiff's lawsuit by granting a summary judgment, noting the plaintiff's copyright infringement claim presented no probative evidence to demonstrate that the defendants factually copied any of the music compositions or sound as a matter of law. *Batiste*, 2019 WL 5401103, at *3.  In later recommending that an award of attorneys' fees was appropriate, the court stated the case filings, hearings, and orders demonstrated the frivolity in the plaintiff's allegations, and, as such, the court found the plaintiff's claims were "objectively weak."  *Id.*

Similarly here, the Court concluded Plaintiff's litigating position lacked factual support because there was no evidence offered to support elements of Plaintiff's copyright claim. Docket Entry # 207 at pp. 13, 15. As urged by MCT in its reply, the Court also concluded Plaintiff's position lacked legal support because Plaintiff's argument had already been considered and rejected by the Fifth Circuit. Docket Entry # 210 at p. 2 (citing Docket Entry # 207 at pp. 17–18). In the Court's August 20, 2019 Order Adopting the Report and Recommendation of the undersigned recommending MCT's motion for summary judgment be granted, Judge Mazzant concluded as follows:

> Plaintiff has failed to present sufficient tangible evidence of source code copying to survive summary judgment. Although the question of substantial similarity is typically left to the impressions of a fact finder, the *Creations Unlimited* decision contemplates that a factfinder will have the opportunity to view the two works side-by-side. *King v. Ames*, 179 F.3d 370, 376 (5th Cir. 1999) (citing *Creations Unlimited*, 112 F.3d at 816). Putting aside the issue of whether Plaintiff may proceed to trial without an expert to opine on the 'substantial similarity' of Plaintiff's code and Defendant's code and also assuming Plaintiff had presented sufficient evidence to create a genuine issue of material fact as to factual copying (which it has not), Plaintiff would still not be able to satisfy the requirement that the protected and alleged infringing code be compared side-to-side. As noted above, Plaintiff's

copyrighted work is comprised of over 250 pages of technical source code. There is no evidence in the record as to the alleged infringing software or executable code which Meredith claimed he leased to Defendant.

Docket Entry # 207 at pp. 17-18.

Plaintiff's arguments in this case were objectively weak. Once it became clear Plaintiff could not establish a prima facie case for copyright infringement because it failed to designate its expert by the deadline, Plaintiff's litigating position bordered on being objectively unreasonable. After full consideration of the parties' arguments regarding the reasonableness of Plaintiff's claims against MCT and Surgical Notes, the Court finds this factor weighs in favor of awarding fees, albeit slightly.

### *The Motivation Factor*

The second factor in deciding whether to award fees is the parties' motivation. In evaluating this factor, other circuits have considered: (1) the defendant's status as an innocent, rather than a willful or knowing, infringer; (2) the plaintiff's prosecution of the case in bad faith; and (3) the defendant's good faith attempt to avoid infringement. *Collins v. Doe*, No. CIV.A. H-10-2882, 2013 WL 2896822, at *7 (S.D. Tex. June 12, 2013) (citing *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1583 (Fed.Cir.1992) (citing *McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316, 323 (9th Cir.1987))).

Here, Defendants persuasively argue Plaintiff had an improper motive for filing this lawsuit. The Surgical Notes Defendants argue the Court can infer improper motive from Plaintiff's refusal to engage in discovery or to accept Surgical Notes' invitation to view source cope, even despite Surgical Notes' March 2018 offer of judgment (which was made in an effort to avoid protracted and expensive litigation). Docket Entry # 192 at p. 8. The Surgical Notes Defendants assert the Court can also rely on Plaintiff's deemed admissions:

22

> The Surgical Notes Defendants propounded discovery on Plaintiff on June 5, 2018, but the Plaintiff failed to answer. Included in these requests were interrogatories that requested 'State all facts that you rely on to support Your allegation that Surgical Notes has used or is using any of VCSI's alleged confidential, proprietary, or trademark information or any of VCSI's "Copyright Materials" (as defined in Your First Amended Complaint). . . .' *Id.* at ¶ 6, (Exhibit 2, p. 15/18 (Interrogatory No. 3) (Dkt. 166-2)).
>
> The propounded discovery included thirty (30) Requests for Admission, several of which relate directly to the lack of any basis for Plaintiff's lawsuit against Surgical Notes. *Id.* p. 16/18 –18/18. These Requests for Admission, which remain unanswered, should be deemed admitted.

*Id.* at p. 3 (also citing, among other Requests for Admission, Request for Admission No. 11: "This lawsuit was filed by Grover Shields, in part, to retaliate against his son, Robert Shields.").

MCT contends Plaintiff pursued this case to interfere with MCT's business, to cause MCT to incur needless legal expenses, and to extract settlement.  Docket Entry # 208 at p. 6. In addition to Plaintiff's inaction in this lawsuit (which MCT asserts "speaks for itself"), MCT argues as follows:

> Plaintiff's actions before initiating this litigation and throughout its pendency have demonstrated that this lawsuit was motivated by greed, unfair competition, and harassment. In its Original Complaint, Plaintiff alleged that its former employee Defendant Meredith improperly sold and/or leased software Meredith had developed to various third parties, including MCT. . . . More than four years ago, Plaintiff filed suit in state court, alleging similar facts—that Meredith violated fiduciary duties owed to Plaintiff by engaging in 'competing business operations through one or more other entities' and 'intentionally misappropriating certain of' Plaintiff's assets. *See* Doc. No. 114-7 ¶ 8, Orig. Pet., *Virtual Chart Solutions I, Inc. v. Meredith*, Cause No. DC-15-03468 (Dallas Cnty. Dist. Ct., Mar. 26, 2015). Plaintiff eventually added its competitor MCT to that lawsuit as an additional defendant because it allegedly received from Meredith Plaintiff's intellectual property. . . . Based on a review of the docket, Plaintiff never propounded discovery on any defendant in that lawsuit or took any depositions. . . . The lawsuit idled in state court for more than a year without prosecution until Plaintiff non-suited without prejudice. . . .
>
> Two weeks after nonsuiting its state court lawsuit (having received no judicial relief) and five years after the software in question was created, Plaintiff registered a

copyright with the U.S. Copyright Office. . . . The underlying work that was copyrighted was not legible to MCT and even Plaintiff later conceded that it was not 'readable.' *See* Doc. No. 155-1, at 3 (stating, after the close of discovery, that Plaintiff has 'finally be[en] able to extract the code in readable format'). For whatever reason, Plaintiff decided it preferred to litigate its claims in Sherman federal court, so it copyrighted whatever it could on short notice to obtain jurisdiction. It appears, the only reason Plaintiff registered its copyright was to file this lawsuit and threaten Defendants.

Copyright in hand, Plaintiff initiated this lawsuit, alleging 'Meredith . . . . improperly provided Defendant MCT access to and use of' Plaintiff's copyrighted work.' Doc. No. 1 ¶ 59. This was essentially the exact same allegation made two years prior in the state court lawsuit. While Plaintiff requested temporary, preliminary, and permanent injunctions, at least in its pleadings, in this lawsuit (as it had likewise done in the underlying state court action), Plaintiff never pursued that relief—demonstrating that protection of its software was not its goal. *See Katz v. Chevaldina*, 127 F. Supp. 3d 1285, 1299–1300 (S.D. Fla. 2015) (finding that plaintiff obtained copyright solely to wage war against defendant).

*Id*. at pp. 6-8.

MCT has also presented evidence of personal animus by Plaintiff's officers towards MCT's president. Docket Entry # 208, Ex. 5 (March 4, 2019 Deposition of Jonathan Shields (Grover Shields' son) at 7:18-8: ("Q. [MCT] is owned by a Robert Shields. Do you have relation to him? A. None worth speaking of. Q. What do you mean none worth speaking of? A. On paper, brother.")); *see also id.* at 11:25-12:2 (explaining Jonathan Shields and Robert Shields share the "same father" but "have different mothers," according to "legal papers"); *see also id.* at 42:11-15 (stating Jonathan has the unofficial title of chief technology officer at VCSI); *see also id.* at 83:1- (stating that in his initial investigation into Surgical Notes, Jonathan looked at Surgical Notes website for any "markers of Meredith's work" but did not find any).

MCT also presents evidence suggesting Plaintiff effectively stopped operating as a business since before this lawsuit was filed. *Id*. at 54:1-11 (stating Plaintiff has had no vendors or customers).

24

According to MCT, this demonstrates that Plaintiff's motivation in pursuing this lawsuit was to harass its competitors, not to protect its creative works. Docket Entry # 208 at pp. 8-9 (citing *Farouk Sys., Inc. v. AG Global Prods., LLC*, No. H-15-0465, 2016 WL 6037231, at *2 (S.D. Tex. Oct. 14, 2016) (awarding attorney's fees to defendants in copyright action where court found the plaintiff had an improper motive in filing lawsuit against business competitor due to personal animosity between the parties)).

Plaintiff appears to have acted with improper motivation (or bad faith conduct). *Spear Mktg.,* 2016 WL 193586, at *6 (citing *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006) ("[I]mproper motivation in bringing a lawsuit or other bad faith conduct weighs heavily in favor of an award of costs and fees."), *aff'd*, 249 Fed. Appx. 845 (2d Cir. 2007)). This factor weighs in favor of awarding attorneys' fees.

### The Compensation and Deterrence Factor

The third factor in deciding whether to award fees is the need for compensation and deterrence. Compensation is available when requiring a party to bear its own costs and fees would run afoul of the purpose of the Copyright Act to promote the progress of science and useful arts. *Spear Mktg.,* 2016 WL 193586, at * 7 (citing *Fogerty*, 510 U.S. at 529 ("The expense of any [litigation] is considerable. . . . It is increasingly recognized that the person who forces another to engage counsel to vindicate, or defend, a right should bear the expense of such engagement." (quoting W. Strauss, Damage Provisions of the Copyright Law, Study No. 31 (H. Judiciary Comm. Print 1960)))). "If unable to recoup costs and fees, businesses whose defense costs outpace their alleged liability could be held hostage by *in terrorem* suits, which would hamper the progress of science and the useful arts." *Spear Mktg.,* 2016 WL 193586, at * 7.

Compensation works hand-in-hand with deterrence. *Id.* at * 8. Courts award fees to deter future plaintiffs from bringing similar frivolous or unreasonable claims. *Id.* (citing *Baker*, 431 F. Supp. 2d at 359).

In *Spear Marketing*, the court concluded the totality of the circumstances warranted an award of attorneys' fees. *Spear Mktg.,* 2016 WL 193586, at * 8.  In that case, the plaintiff's damages expert opined that the defendant received unjust enrichment of $66,653 (well below its defense costs). *Id.* at *7. According to the court, the defendant made an offer of judgment to avoid continued escalating litigation costs, but the plaintiff did not respond, forcing the defendant to continue its defense and to incur an additional $374,792.80 in fees. *Id.*  Even though the court did not find the plaintiff's rejection of  the offer of judgment in bad faith, the court noted it "likely would have been more cost-effective for BancorpSouth to settle rather than expend significant resources to defend against SMI's unsuccessful, possibly frivolous, and objectively unreasonable claims."  *Id.*

The court stated "[f]ailure to award compensation here would create a perverse incentive for defendants to settle simply to avoid large litigation costs even when not at fault."  *Id.*  The court further concluded the plaintiff's lawsuit had numerous flaws in substance and execution that Plaintiff did not seek to redress." *Id.* at *8.  Like the court in *Spear Marketing*, the Court finds "this type of suit and this type of conduct should be deterred."  *Id.*  Under the circumstances involved in this case, awarding fees will accomplish this deterrence.  The Court finds compensation and deterrence factors weigh in favor of granting attorneys' fees.

### Other considerations

The *Fogerty* factors are not exclusive, and the Court is required to account for the "totality of circumstances in a case" in determining whether a fee award is warranted. *Kirtsaeng*, 136 S. Ct.

at 1985. "[I]n any given case, a court may award fees even though the losing party offered reasonable

arguments (or, conversely, deny fees even though the losing party made unreasonable ones)." *Id.* at

1988. As explained by the Supreme Court:

> For example, a court may order fee-shifting because of a party's litigation
> misconduct, whatever the reasonableness of his claims or defenses. *See, e.g., Viva
> Video, Inc. v. Cabrera*, 9 Fed.Appx. 77, 80 (C.A.2 2001). Or a court may do so to
> deter repeated instances of copyright infringement or overaggressive assertions of
> copyright claims, again even if the losing position was reasonable in a particular case.
> *See, e.g., Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 593–595 (C.A.6
> 2008) (awarding fees against a copyright holder who filed hundreds of suits on an
> overbroad legal theory, including in a subset of cases in which it was objectively
> reasonable). Although objective reasonableness carries significant weight, courts
> must view all the circumstances of a case on their own terms, in light of the
> Copyright Act's essential goals.

*Id.* at 1988–89.

Here, the procedural history of this case further indicates that a fee award is appropriate.

Plaintiff took no action for almost a year after initiating this suit, failed to offer expert testimony by

the deadline, did not diligently seek to revive or extend its deadline, did not produce a legible copy

of its own copyrighted work, did not take a single deposition, and did not take steps to obtain

sufficient evidence to meet its burden. Regarding Surgical Notes, Plaintiff failed to engage in

discovery and ignored an offer of judgment, requiring Surgical Notes to prolong its defense. This

weighs in favor of an award of attorneys' fees. *See SortiumUSA, LLC v. Hunger*, No.

3:11-CV-1656-M, 2015 WL 179025, at *3 (N.D. Tex. Jan. 14, 2015) (finding that the continued

assertion of meritless claims warranted fee award).

**3.     Conclusion**

The Court in the exercise of its discretion finds that the totality of the circumstances,

including all of the *Fogerty* factors, militate in favor of awarding Defendants their reasonable

27

attorneys' fees incurred in connection with the copyright infringement claim.  *Farouk*, 2016 WL 6037231, at *3. In all, no single factor was dispositive, but the totality of the circumstances—the possibly frivolous aspects and objectively weak nature of Plaintiff's case as it continued, Plaintiff's bad faith conduct, and considerations of compensation and deterrence— warrant an award of attorneys' fees.

The Court must now consider the proper amount of the attorneys' fees. First, it will calculate the appropriate lodestar values. Then, it will evaluate the lodestar in light of the twelve *Johnson* factors.

## C.    Reasonable attorneys' fees

## 1.    Applicable law

The criteria to be applied in determining the proper amount of fees to be awarded in the Fifth Circuit is articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Batiste*, 2019 WL 5401103, at *2. The Fifth Circuit has applied the *Johnson* factors to copyright infringement cases in previous instances. *Id.* (citing *Micromanipulator Co., Inc. v. Bough*, 779 F.2d 255, 259 (5th Cir. 1985) (citing *Engel v. Teleprompter Corp.*, 732 F.2d 1238, 1241 (5th Cir. 1984))).

The Supreme Court has indicated that the "lodestar" calculation is the "most useful starting point" for determining the award of attorneys' fees. *Batiste*, 2019 WL 5401103, at *2 (quoting *Hensley*, 461 U.S. at 433). The lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work. *Black v. SettlePou, P.C.,* 732 F.3d 492, 502 (5th Cir. 2013) (citing *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir.2012)). There is a strong presumption of the reasonableness of the lodestar amount. *Black,* 732 F.3d at 502 (citing *Perdue*, 559 U.S. at 552;

also citing *Saizan*, 448 F.3d at 800).

However, after calculating the lodestar, a district court may enhance or decrease the amount of attorney's fees based on "the relative weights of the twelve factors set forth in *Johnson*," listed in the Court's general law section above. *Id*. The lodestar may not be adjusted due to a *Johnson* factor that was already taken into account during the initial calculation of the lodestar. *Id*. (noting that applying the same Johnson factor during the initial calculation and then again to adjust the lodestar "would be impermissible double counting").

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Energy Intelligence*, 2018 WL 2048896, at *13 (quoting *Hensley*, 103 S. Ct. at 1941). "'[T]he burden is on the applicant to produce satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Hacienda Records*, 2019 WL 93306, at *4 (quoting *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886, 896, n.11 (2011))). Courts further require applicants to provide contemporaneous billing records or other documents, which are examined to determine which hours are compensable and which are not. *Hacienda Records*, 2019 WL 93306, at *4 (citing *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 755 (S.D. Tex. 2008)).

"The party seeking attorneys' fees must present adequately documented time records to the court. Using this time as a benchmark, the court should exclude all time that is excessive, duplicative, or inadequately documented." *Hacienda Records*, 2019 WL 93306, at *4 (quoting *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)). Parties seeking attorneys' fees have the burden of showing the reasonableness of the hours billed and also of proving that they exercised billing

judgment. *Hacienda Records*, 2019 WL 93306, at *4 (citing *Hensley*, 461 U.S. at 433–34). Counsel exercises billing judgment when he or she documents hours charged and the hours written off as unproductive, excessive, or redundant. *Hacienda Records*, 2019 WL 93306, at *4 (citing *Hensley*, 461 U.S. at 434).

An appropriate hourly rate is the market rate in the legal community for similar services by lawyers of comparable skill, experience, and reputation. *SortiumUSA, LLC v. Hunger*, No. 3:11-CV-1656-M, 2015 WL 179025, at *3 (N.D. Tex. Jan. 14, 2015). The relevant community for determining the market rate is the community where the district court sits. *Id.* (citing *Tollett v. City of Kemah*, 285 F.3d 357, 369 (5th Cir. 2002)). Generally, parties establish the community rate through affidavits of other attorneys practicing there. *Tollett*, 285 F.3d at 469 (citing *Watkins*, 7 F.3d at 458).

After the calculation of the lodestar, the burden then shifts to the party opposing the fee to contest the reasonableness of the hourly rate requested or the reasonableness of the hours expended "by affidavit or brief with sufficient specificity to give fee applicants notice" of the objections. *Batiste*, 2019 WL 5401103, at *2 (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)).

## 2.    Analysis

### a.    The Surgical Notes Defendants

The Surgical Notes Defendants seek $160,672.75 in attorneys' fees, comprised of $86,267.25 in attorneys' fees due to Whitaker Chalk Swindle & Schwartz PLLC ("Whitaker Chalk"), $24,598.00 in attorneys' fees due to local counsel Siebman, Forrest, Burg, & Smith, LLP ("Siebman"), and $49,807.50 in attorneys' fees due to former counsel Exall & Wood, PLLC ("Exall"). Declaration

of Richard L. Schwartz in Support of the Surgical Notes Defendants' Attorney Fees and Expenses ("Schwartz Decl."), ¶ 11. Surgical Notes' application for attorneys' fees is supported by the Declaration of Richard L. Schwartz, one of the principal attorneys on the case, and by billing statements from Whitaker Chalk, local counsel Siebman, and former counsel Exall.

The Surgical Notes Defendants request reimbursement of fees incurred for work performed by the following Whitaker Chalk attorneys who worked on this case: (1) Decker Cammack (lead counsel – hourly rate of $450.00); (2) Richard L. Schwartz (consultation with Decker Cammack on issues of strategy – hourly rate of $580.00); (3) David Skeels (attorney who specializes in intellectual property – hourly rate of $400.00); and (4) Rebecca K. Eaton (attorney who primarily specializes in business litigation, including intellectual property – hourly rate of $350.00). Surgical Notes also requests reimbursement of fees incurred for work performed by Siebman attorneys, Clyde Siebman (hourly rate of $450.00) and Elizabeth Siebman Forrest (hourly rate of $350.00).  Schwartz Decl., ¶ 6. The Surgical Notes Defendants also request reimbursement of fees incurred for work performed by several Exall attorneys that assisted in this matter: (1) Kimberly Annello (hourly rate of $500.00); (2) Scott Garelick (hourly rate of $450.00); (3) David Wood (hourly rate of $350.00); and (4) Thalia Banowsky (hourly rate of $295.00). According to Schwartz, all of these attorneys no longer practice law at the Exall firm. *Id*., ¶ 7. The primary attorney on the case for the Exall firm was Ms. Annello, who was previously a shareholder at Greenberg Traurig, and is now Trial Counsel at Underwood Perkins, P.C . *Id.*

Mr. Schwartz states he has been licensed to practice law in the State of Texas since 1973 and has "spent the bulk of [his] 44 plus years specializing [his] entire practice in all phases of intellectual property disputes, representing plaintiffs and defendants, in all types of patent, trademark and

copyright disputes." *Id*., ¶ 4. He has been a partner in "several IP boutique firms" and is now a member of Whitaker Chalk. *Id.* Because of his experience working in several different firms with attorneys who specialize in intellectual property matters, Mr. Schwartz is "very familiar with the rates charged in this industry, based on level of experience," as well as the type of work that is generally reasonable and necessary in these types of disputes. *Id.*

Mr. Schwartz declares the tasks identified in the invoices were reasonable and necessary. *Id*., ¶¶ 8-10. Mr. Schwartz further declares the rates charged by the Whitaker Chalk attorneys are "under market" given the attorneys' skills and levels of experience. *Id*., ¶ 5. According to Mr. Schwartz, the hourly rates of the Siebman attorneys are, in his opinion, "appropriate in light of their skills and levels of experience." *Id*., ¶ 6. Mr. Schwartz declares the hourly rates for the former Exall attorneys "appear to be appropriate in light of their skills and levels of experience." *Id*., ¶ 7.

Plaintiff does not contest the reasonableness of the rates. Rather, Plaintiff argues the Court should not award *any* fees if it is not afforded the opportunity to view what work was done, for how long, by whom, and at what rates. Docket Entry # 195 at p. 8 (emphasis in original). Plaintiff asserts the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. *Id.* at p. 9 (citing *Hensley*, 461 U.S. at 433-34). Specifically, Plaintiff argues it should not be required to pay for time spent on "meritless motion practice" and for pre-discovery stays pending a decision on the Rule 12(b)(6) motions filed early in this case by Plaintiff's former law firm (which billed almost $50,000.00 "before litigation even started," according to Plaintiff). Docket Entry # 195 at p. 9. According to Plaintiff, since then, Surgical Notes has engaged in minimal document production and discovery, having simply made its code available for inspection and having responded to only a single set of Requests for

Production.

Where an attorney's customary billing rate is the rate at which the attorney requests the lodestar to be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed. When that rate is not contested, it is *prima facie* reasonable. *Batiste*, 2019 WL 5401103, at *5 (citing *La. Power & Light*, 50 F.3d at 328). Here, the rates are not contested by Plaintiff and are therefore *prima facie* reasonable.  What is more, the Court is familiar with the relevant legal market and finds the rates are within the market rate for attorneys handling this type of litigation in the Dallas area. The undersigned finds, based on the information and record before the Court, including the Declaration of Richard Schwartz, the requested hourly rates of the billing attorneys are reasonable.

Plaintiff contends Surgical Notes should only be awarded fees for work on the copyright defense itself, and not for work on other claims or for other defendants.  Docket Entry # 195 at p. 10 (noting Whitaker Chalk charged Surgical Notes for attending hearings for MCT's Rule 202 filing in the Dallas Court case filed against Meredith or that Whitaker Chalk attorneys performed for both Surgical Notes and Meredith). Additionally, Plaintiff asserts the bills submitted by local counsel (Docket Entry # 192-10) are duplicative and cumulative of those submitted by Whitaker Chalk (Docket Entry # 192-9), and it "also appears that Whitaker Chalk paid for Mr. Siebman's firm's time, but Surgical Notes double counted the amount(s)."  Docket Entry # 195 at p. 11.  Plaintiff further argues Surgical Notes should not be allowed to collect the approximately $27,000 in fees it incurred after Plaintiff offered to dismiss Surgical Notes from the lawsuit in August 2018.  *Id*. at p. 12.

The Court finds the last argument without merit, noting Plaintiff's August 2018 offer of

dismissal was conditioned on Surgical Notes' waiving any claim for attorneys' fees. The Court also finds unpersuasive Plaintiff's assertion that Surgical Notes is not entitled to seek reimbursement of attorneys' fees for tasks that may have also benefitted co-defendant Brian Meredith.  Nor does the Court find persuasive Plaintiff's suggestion that Surgical Notes has double counted the fees charged by Whitaker Chalk and local counsel Siebman.  Although the billing records of Whitaker Chalk include the charges of local counsel, Surgical Notes does not include those amounts in its attorneys' fees request for Whitaker Chalk.

The Court notes that duplicate billing under a fee-shifting statute is not *per se* unreasonable, as long as the award for time spent by two or more attorneys "reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation." *Batiste v. Lewis*, No. CV 17-4435, 2019 WL 1591951, at *4 (E.D. La. Apr. 12, 2019) (quoting *Thomas v. Frederick*, No. 87-1950, 1992 WL 17273, *1 (W.D. La. Jan. 29, 1992) (citing *Johnson v. University of University of Alabama*, 706 F.2d 1205, 1208 (11th Cir. 1983))). Moreover, the district court has considerable discretion in this area because of its familiarity with the case and the attorney's work. *Batiste*, 2019 WL 1591951, at *4 (citing *Associated Builders & Contractors, Inc. v. Orleans Parish School Bd.*, 919 F.2d 374, 379 (5th Cir. 1990); also citing *Berberena v. Coler*, 753 F.2d 629, 633 (7th Cir. 1985)).

The record before the Court reflects the distinct contribution of both Whitaker Chalk and local counsel Siebman. There is no unnecessary duplication, and there is an appropriate delegation of work to associates with less experience and lower rates. *Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, LP*, No. CV H-14-1903, 2018 WL 2048896, at *20 (S.D. Tex. May 2, 2018).

34

The party seeking fees also has "the burden of showing . . . that the attorneys exercised billing judgment." *Black*, 732 F.3d at 502 (citing *Saizan*, 448 F.3d at 799). Billing judgment is defined as "documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan*, 448 F. 3d at 799. Any "'excessive, duplicative, or inadequately documented time should be eliminated from an attorney's fee award.'" *Montano v. Orange Cty., Tex.*, No. 1:13-cv-611, 2015 WL 11110631, at *4 (E.D. Tex. Apr. 24, 2015) (quoting *Leonard v. Louisiana*, No. 07-813, 2013 WL 3558291, at *3 (W.D. La. July 10, 2013)). "'The hours surviving this vetting process are those reasonably expended on the litigation.'" *Id.* (quoting *Leonard*, 2013 WL 3558291, at *3).

Mr. Schwartz does not state in his declaration that any of the firms exercised billing judgment. He does not refer to "a single minute that was written off as unproductive, excessive, or redundant." *Champion v. ADT Sec. Servs., Inc.*, No. 2:08-cv-417-TJW, 2010 WL 4736908, at *6 (E.D. Tex. Nov. 16, 2010). Further, the bills themselves do not show that any reduction was made. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Kryptek Outdoor Grp., LLC v. Salt Armour, Inc.*, No. 1:15-CV-348, 2016 WL 7757267, at *6 (E.D. Tex. Mar. 28, 2016) (quoting *Hensley*, 461 U.S. at 433).

Courts often utilize a flat reduction of a specific percentage from the award. *Batiste*, 2019 WL 5401103, at *6 (citing *Delgado v. Village of Rosemont*, No. 03 C 7050, 2006 WL 3147695, at *7 (N.D. Ill. Oct. 31, 2006) (reduction of total fees by 35% for vagueness, block billing and lack of detail); also citing *Phoenix Four, Inc., v. Strategic Resources Corporation*, No. 05 Civ. 4837(HB), 2006 WL 2135798, at *2 (S.D.N.Y. Aug. 1, 2006) (fee award reduced by 25% for block billing); also citing *Ass'n of Holocaust Victims for Restitution of Artwork and Masterpieces v. Bank Austria*

*Creditanstalt*, No. 04 Civ. 3600(SWK), 2005 WL 3099592, at *7 (S.D.N.Y. Nov. 17, 2005);

(reduction of award by 25% for block billing, excessive hours, and vagueness in time entries); also

citing *Sea Spray Holdings, Ltd. v. Pali Fin. Group Inc*., 277 F. Supp. 2d 323, 326 (S.D.N.Y. 2003)

("because of . . . the inherent difficulties the court would encounter in attempting to parse out

reasonable hours and manpower for appropriate tasks, the court finds that a 15%" flat reduction of

fees . . . is warranted."); also citing *Creecy v. Metropolitan Prop. & Cas. Ins. Co.*, 548 F. Supp. 2d

279 (E.D. La. 2008) (Roby, J)).

Judge Mazzant recently reduced the number of hours billed by twelve percent (six percent

from Potter Minton's hours and six percent from Hogan Lovells's hours) to account for the failure

to provide evidence of billing judgment. *See* Cause No. 4:15cv766-ALM (Docket Entry # 394)

(citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993) (explaining "a trial court should obtain

sufficient information to make a meaningful evaluation of the application for attorney's fees.

Charges for duplicative, excessive, or inadequately documented work should be excluded.")).  Here,

for each Whitaker Chalk and Siebman attorney who billed in excess of one hour, the Court will

reduce the total number of hours by ten percent (five percent for each firm) to account for the failure

to provide evidence of billing judgment.

The Court finds the appropriate lodestar to be calculated for Whitaker Chalk as follows: (1)

114.62 hours (120.65 billed hours - 6.0325 hours) for Decker Cammack at $450.00 an hour

($51,579.00); (2) 0.20 hour for Richard L. Schwartz at $580.00 an hour ($116.00); (3) 1.0 hour for

David Skeels at $400.00 an hour ($400.00); and (4) 81.37 hours (85.65 billed hours - 4.28 hours)

for Rebecca K. Eaton at $350.00 an hour ($28,479.50) (totaling $80,574.50).[4] The Court finds the appropriate lodestar to be calculated for Siebman as follows: (1) 26.88 hours (28.3 billed hours - 1.42 hours) for Clyde Siebman at $450.00 an hour ($12,096.00); and (2) 31.82 hours (33.5 billed hours - 1.68 hours) for Elizabeth Siebman Forrest at $350.00 an hour ($11,137.00) (totaling $23,233.00).[5]

Turning to former counsel Exall, further percentage reduction is warranted. The Court finds that recovery of all of the fees billed by former counsel Exall (totaling almost $50,000.00) would be unreasonable, both because the fees were incurred within the first five months of this lawsuit and because of the amount of time spent by Kimberly Annello, instead of less expensive attorneys. After a detailed review of the bills submitted by Surgical Notes, none of which show that any reduction was made for unproductive, excessive, or redundant work, the Court recommends the 59.7 requested hours for Ms. Annello be reduced by half. The Court finds the appropriate lodestar to be calculated for Exall as follows: (1) 30 hours for Kimberly Annello at $500.00 an hour ($15,000.00); (2) 27.5 hours for Scott Garelick at $450.00 an hour ($12,375.00); (3) 17.3 hours for David Wood at $350.00 an hour ($6,055.00); and (4) 4.3 hours for Thalia Banowsky at $295.00 an hour ($1,268.50) (totaling $34,698.50).[6]

The Court now must determine whether to alter each lodestar amount in light of the twelve *Johnson* factors, including: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the requisite skill to perform the legal services properly; (4) the preclusion of other

---

[4] The Court does not include the time reflected on the billing statements for the following individuals: Jennifer Ross, Terry Gwynne, Clark Cowley, and Kimberly Krueger (totaling $1481.25). "To the extent an attorney has not been identified, his or her time is not compensable since it has not been demonstrated to be reasonable in this case and billed at a customary rate." *Neles-Jamesbury, Inc. v. Bill's Valves*, 974 F. Supp. 979, 987 (S.D. Tex. 1997).

[5] The Court does not include the time reflected on the billing statements for "DDL" (totaling $187.50).

[6] The Court does not include the time reflected on the billing statements for Mary Bayer (totaling $259.00).

employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Spear Mktg., Inc. v. Bancorpsouth Bank*, No. 3:12-CV-3583-B, 2016 WL 193586, at *13 (N.D. Tex. Jan. 14, 2016), *aff'd,* 844 F.3d 464 (5th Cir. 2016) (citing *Johnson*, 488 F.2d at 717–19). As in *Spear Marketing*, here many of these factors are "fully reflected in the lodestar amount." *Spear Mktg.*, 2016 WL 193586, at *13. Additional alterations based on one of these factors would be impermissible double counting. *Id.* (citing *SortiumUSA, LLC*, 2015 WL 179025, at *3). Any factors not fully reflected in the lodestar amounts do not have a combined impact significant enough to warrant an alteration. *Spear Mktg.*, 2016 WL 193586, at *13. Thus, the Court finds no need to alter the lodestar amount. Therefore, the undersigned recommends the Court award attorneys' fees to Surgical Notes in the amount of $138,506.00

**b.    MCT**

In its proposed bill of costs and brief in support of an award of attorneys' fees, MCT seeks an award of attorneys' fees in the amount of $229,957.00, reflecting 491.5 hours attributable to defending the copyrights claim from January 2018 to July 31, 2019. MCT's application for attorneys' fees is supported by the Declaration of James M. Stanton ("Stanton Decl."), the founding attorney for Stanton LLP, and by billing statements from Stanton LLP. MCT requests reimbursement of fees incurred for work performed by the following attorneys and paralegals from Stanton LLP who worked on this case: (1) James M. Stanton (partner – hourly rate of $975.00 - 13.6 hours); (2)

38

Jennifer S. Richards (partner – hourly rate of $595.00 - 62.0 hours); (3) Brandon A. Fuqua (associate – hourly rate of $495.00 - 338.1 hours); (4) Austin Brakebill (law clerk – hourly rate of $160.00 - 18.3 hours); and (5) Shirin Ravandi (paralegal - hourly rate of $160.00 - 59.5 hours).

Mr. Stanton is experienced in and familiar with the work required in cases similar to this case and with the fees charged by attorneys handling cases such as this one.  Stanton Decl., ¶ 4.  Based on his experience in the industry and having practiced law for over sixteen years in North Texas, Mr. Stanton believes the rates charged by Stanton LLP conform to the prevailing hourly rates in the community for similar work.  *Id.*, ¶ 5.  According to Mr. Stanton, the rates charged by Ms. Richards and Mr. Fuqua, to whom Mr. Stanton delegated most of the work in this case, "are under market given their skill and level of experience."  *Id.*  Where possible, legal work was performed by Mr. Brakebill, a recent law school graduate awaiting result from the July 2019 Texas Bar Examination. *Id.*  Ms. Ravandi, a paralegal, also worked on this matter.  *Id.*

Attached to Mr. Stanton's declaration are redacted billing statements.  *Id.*, ¶ 7. According to Mr. Stanton, time entries for fees and expenses not properly recoverable (non-copyright claims) have been redacted and were not segregated because they were sufficiently intertwined "such that the same work would have been performed for which fees are requested even if Plaintiff had not brought the unrecoverable claims."  *Id.* Mr. Stanton stated he reviewed the billing statements for Stanton LLP's work on this case and deleted any charges he deemed to be unproductive or redundant.  *Id.*, ¶ 12.

In its response, Plaintiff requests the Court deny attorneys' fees to MCT and only award those costs available under Rule 54 and 28 U.S.C. § 1920.  Docket Entry # 209 at p. 13.  Plaintiff does not take issue with the hourly rates charged by MCT's attorney and paralegals (ranging from $160.00 to $975.00 an hour).  Nor does Plaintiff challenge the 491.5 hours MCT claims to have expended

to defend against Plaintiff's copyright claim from January 2018 to July 31, 2019.

In support of Mr. Stanton's statement that the rates charged are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation, MCT relies on State Bar of Texas 2015 Hourly Rate Fact Sheet (attached as Ex. 6) and 2018 Legal Trends Report (attached as Ex. 7). The undersigned finds, based on the information and record before the Court, including the Declaration of Mr. Stanton, that the requested hourly rates for Ms. Richards and Mr. Fuqua in this case are reasonable and within the prevailing market rate for attorneys handling this type of litigation in North Texas. *SortiumUSA, LLC v. Hunger*, No. 3:11-CV-1656-M, 2015 WL 179025, at *6 (N.D. Tex. Jan. 14, 2015) (citing *Szijjarto v. McCarrell*, No. H–11–4226, 2014 WL 555122, at *3–*4 (S.D. Tex. Feb, 12, 2014) (quoting *Fluor Corp. v. Citadel Equity Fund Ltd.*, No. 3:08–cv–1556–B, 2011 WL 3820704, at *5 (N.D. Tex. Aug.26, 2011)) (finding reasonable an hourly rate of $350 for a partner and $250 for an associate and observing that in "cases involving Texas lawyers, the hourly rates range from $220 for associates to $510 for senior partners); also citing *Powell v. Procollect, Inc*., No. 11–cv–846–B, Dkt. No. 30 (N.D. Tex. July 18, 2012) (finding an average hourly rate of $250, with hourly rates from $100 to $400 per hour for each attorney, to be reasonable in this community)).

However, the undersigned is unable to find that MCT has produced satisfactory evidence that the requested rate for Mr. Stanton is in line with those prevailing in this community for similar services by lawyers of reasonably comparable skill, experience, and reputation. The evidence does not support a rate almost double the rate of other partners from other firms who have worked on this case. Accordingly, the undersigned recommends the Court reduce the hourly rate for Mr. Stanton to $595.00, the same rate for partner Jennifer S. Richards.

MCT's attorneys and paralegals defended both Plaintiff's copyright and non-copyright claims.  Although the time expended for each was not always segregated, MCT asserts the claims were intertwined making it "impossible to differentiate between them."  Docket Entry # 208 at p. 12.  The Court finds the number of hours expended was reasonable.  The Court finds the appropriate lodestar here to be calculated as follows: (1) 13.6 hours for James Stanton at $595.00 an hour ($8,092.00); (2) 62.0 hours for Jennifer Richards at $595.00 an hour ($36,890.00); (3) 338.1 hours for Brandon Fuqua at $495.00 an hour ($167,359.50); (4) 18.3 hours for Austin Brakebill at $160.00 an hour ($2,928.00); and (5) 59.5 hours for Shirin Ravandi at $160.00 an hour ($9,520.00) (totaling $224,789.50).

As indicated above, after the lodestar is determined, the Court may then adjust the lodestar upward or downward depending on the twelve factors set forth in *Johnson*, 488 F.2d at 717-19. The *Johnson* factors are:

> (1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases.

*Id.* To the extent that any *Johnson* factors are subsumed in the lodestar, they should not be reconsidered when determining whether an adjustment to the lodestar is required. *Batiste*, 2019 WL 5401103, at *8 (citing *Migis v. Pearle Vision, Inc*., 135 F.3d 1041, 1047 (5th Cir. 1998)). The Court, considering the *Johnson* factors, finds the amount awarded is sufficient and not requiring a downward departure.

Pursuant to the documentation provided by MCT, the undersigned recommends the Court

41

award  MCT reasonable attorneys' fees of $224,789.50.

## V. COSTS

### A.    Applicable law

The Surgical Notes Defendants and MCT request costs pursuant to 17 U.S.C. § 505, Federal Rule of Civil Procedure 54, and 28 U.S.C. § 1920. Specifically, Surgical Notes seeks $2,137.55 in costs incurred by Whitaker Chalk in this matter. MCT seeks to recover costs totaling $13,562.69 for a deposition transcript, U.S. Copyright Office records, forensic imaging, and identifying and producing source code.

Twenty-eight U.S.C. § 1920 defines "costs" for Rule 54 and provides that a court may tax as costs the following:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation in services under section 1828 of this title.

28 U.S.C. § 1920.  Because 17 U.S.C. § 505 specifically applies to copyright cases, it will govern the Court's analysis. *Guzman v. Hacienda Records*, No. 6:12-CV-42, 2015 WL 4920058, at *1 (S.D. Tex. Aug. 18, 2015) (citing *Susan Wakeen Doll Co. v. Ashton Drake Galleries*, 272 F.3d 441, 458 (7th Cir.2001) ("[A]ny award of fees and non-taxable costs must come through [section 505], and

42

not through the general cost provisions of 28 U.S.C. § 1920.")). Application of § 505 usually results

in an award of costs to the prevailing party, although the district court retains discretion on the issue.

*Guzman*, 2015 WL 4920058, at *1 (citing 17 U.S.C. § 505 (stating that "the court in its discretion

may allow the recovery of full costs" and "may also award a reasonable attorney's fee" to a

prevailing party in a copyright case (italics added)); also citing *Gen. Universal Sys., Inc. v. Lee*, 379

F.3d 131, 147 (5th Cir.2004) ("The decision to impose costs [under section 505] lies in the sound

discretion of the district court, reviewable only for an abuse of discretion.")).

The Supreme Court has very recently clarified that the "full costs" that may be shifted under

§ 505 are only those that fall within "the six categories [of costs] specified in the general costs

statute, codified at [28 U.S.C.] §§ 1821 and 1920." *Everly v. Everly*, No. 3:17-CV-01440, 2019 WL

1470603, at *1 (M.D. Tenn. Apr. 3, 2019) (quoting *Rimini St., Inc. v. Oracle USA, Inc*., 139 S. Ct.

873, 876 (March 4, 2019)).   "In *Rimini Street*, the district court had ordered the losing defendants

to pay the prevailing plaintiff in a copyright case $12.8 million for litigation expenses, such as expert

witness fees, e-discovery, and jury consulting. The Supreme Court reversed on the basis that the

recovery of such expenses was not authorized by either § 1821 or § 1920." *Everly*, 2019 WL

1470603, at *1.

**B.     Analysis**

**1.     The Surgical Notes Defendants**

Surgical Notes seeks $2,137.55 in costs incurred by Whitaker Chalk in this matter.[7] Whitaker

Chalk's billing records reflect the following expenses: (1) Lexis Research (totaling $98.54); (2)

---

[7] Although Mr. Schwartz's declaration lists the total costs as $2,137.85, the billing records reveal the total amount is $2,137.55.

Xerox Costs (totaling $227.20); (3) Postage ($7.25); (4) Copyright work ($635.00); (5) Government Liaison Services, Inc. ($492.80); (6) Overnight delivery ($52.40); (7) Copyright Application Fee ($55.00); (8) Asset Report and Criminal Background Check ($527.72); (9) Travel Expense ($29.44); and (10) Online Services ($12.20).  Plaintiff does not specifically object to the recovery of the costs included in Surgical Notes' Bill of Costs. Based on the Court's review of the record and Plaintiff's failure to expressly object, the Court finds the expenses are allowable costs under 28 U.S.C. § 1920. The Court recommends the full amount sought by the Surgical Notes Defendants' Bill of Costs—$2,137.55— be taxed against Plaintiff.

**2.     MCT**

The party seeking costs has the burden of establishing that, where appropriate, the costs it incurred were reasonably necessary to the litigation. *GC2 Inc. v. Int'l Game Tech.*, No. 16 C 8794, 2019 WL 3410223, at *2 (N.D. Ill. July 29, 2019) (citing *Nat'l Org. for Women, Inc. v. Scheidler*, 750 F.3d 696, 698 (7th Cir. 2014); also citing *Alexander v. CIT Tech. Fin. Servs., Inc.*, 222 F. Supp. 2d 1087, 1089-90 (N.D. Ill. 2002)). In this context, "necessary" does not mean "indispensable;" the party seeking costs must simply demonstrate that costs were incurred for more than attorney preference or convenience.  *GC2 Inc.*, 2019 WL 3410223, at *2 (quoting *Scheidler*, 750 F.3d at 698; also citing *Majeske v. City of Chicago*, 218 F.3d 816, 825 (7th Cir. 2000)).

MCT first seeks costs of $999.10 for a deposition transcript of Plaintiff's Vice President taken in this litigation, as provided in 28 U.S.C. § 1920(2)-(4).[8] Mr. Stanton states MCT took the

---

[8] Although §1920(2) allows a prevailing party to recover fees for necessary printed or electronically recorded transcripts, the "incidental costs associated with depositions . . . are generally not recoverable." *Maurice Mitchell Innovations, L.P. v. Intel Corp.*, 491 F. Supp. 2d 684, 687 (E.D. Tex. 2007); *see also Power-One, Inc. v. Artesyn Techs. Inc.*, No. 2:05CV463, 2008 WL 4065871 at *6 (E.D. Tex. Aug. 27, 2008) ("Incidental costs associated with depositions . . . are generally not recoverable . . . . These fees are not enumerated in section 1920 and case law makes it clear that they are not recoverable.").

deposition to show motivation in filing and pursuing this case, the purported valuation of Plaintiff's copyright and its business, and to rebut any testimony at trial. Stanton Decl., ¶ 10. While the deposition was transcribed by means of both stenographer and videographer, MCT seeks reimbursement of the written transcript costs. The Court overrules Plaintiff's objection to the cost of the deposition transcript because Plaintiff does not dispute that the transcript was necessarily obtained for use in the case.

MCT also seeks costs of $448.00 for the Copyright Office fees MCT paid for copies of the correspondence and applications associated with Plaintiff's copyright registrations pursuant to 28 U.S.C. § 1920(4), which authorizes fees for "the costs of making copies of any materials where the copies are necessarily obtained for use in the case." Plaintiff asserts MCT has failed to demonstrate the copying costs were necessarily obtained for use in the case. The Court disagrees. According to Mr. Stanton, the "copyright records were the most cost effective and, to [his] knowledge, only means of obtaining copies of Plaintiff's correspondence with the U.S. Copyright Office in applying for its copyright that further demonstrated Plaintiff's motivation in obtaining the copyright (for purposes of filing this lawsuit) and Plaintiff's lack of clarity surrounding what it was actually copyrighting." Stanton Decl., ¶ 10.

MCT also seeks costs of $2,661.25 for the creation of a forensic image of MCT's server. According to Mr. Stanton, forensic imaging of MCT's servers was necessary because Plaintiff claimed that MCT possessed and was using Plaintiff's copyrighted source code, but Plaintiff failed to define how and in what capacity MCT was using it. Stanton Decl., ¶ 10. "To comply with the Federal Rules of Civil Procedure, ascertain the scope and degree, if any, of MCT's alleged

45

unauthorized copying and to preserve the electronically stored information in its original state, forensic imaging was the best and most effective means of obtaining the information necessary in this litigation." *Id.* Mr. Stanton further explains that MCT had a continued need for the use and custody of its servers, necessitating the forensic imaging of its servers so that its business was not further disrupted by this lawsuit. *Id.*

The Court finds this expense was for the purpose of making a copy and that the copy was necessary for preparation for the trial. *Basler v. Barron*, No. CV H-15-2254, 2017 WL 3394603, at *5 (S.D. Tex. Aug. 8, 2017) (citing *Javeler Marine Servs. LLC v. Cross*, 175 F. Supp. 3d 756, 764 (S.D. Tex. 2016) (Atlas, J.) ("[F]orensic images of Defendants' electronic storage devices constituted 'making copies' according to the plain language of § 1920(4).")); *see also Cornfield v. Pickens*, No. CV-16-00924-PHX-ROS, 2018 WL 8262770, at *3 (D. Ariz. Mar. 22, 2018), *aff'd sub nom. Cornfield v. Thompson*, 765 Fed. Appx. 387 (9th Cir. 2019) (finding the defendants had satisfied their burden of establishing the costs of forensic imaging was recoverable under § 1920).

Finally, MCT seeks costs of $9,454.34 for the identification and production of MCT's source code through a third-party e-discovery vendor pursuant to 28 U.S.C. § 1920(4). According to MCT, these costs reflect digital reproduction costs incurred to conform with the standards the parties agreed in the Protective Order. Docket Entry # 210 at p. 5. The Court finds this cost is also properly taxed against Plaintiff as it was necessarily obtained for use in this case. *See Georgetown Rail Equip. Co. v. Holland L.P.*, No. 6:13-CV-366, 2016 WL 3531301, at *2 (E.D. Tex. Mar. 31, 2016) (citing *CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320, 1332–33 (Fed. Cir. 2013) ("Covered costs include the costs incurred in providing a secured computer for the time the requester is entitled to access to it, installing on the secured computer whatever review software the requester requires, and

46

copying the source code files to the secured computer.")).

The undersigned recommends the full amount sought by MCT's Bill of Costs—$13,562.69—be taxed against Plaintiff.

## VI. RECOMMENDATION

Based on the foregoing analysis, it is hereby

**RECOMMENDED** that The Surgical Notes Defendants' Proposed Bill of Costs and Brief in Support of an Award of Attorney Fees Pursuant to 17 U.S.C. § 505 (Docket Entry # 192) and Defendant MRI Centers of Texas, LLC's Proposed Bill of Costs and Brief in Support of Award of Attorney's Fees (Docket Entry # 208**)** be **GRANTED** as modified herein and summarized as follows:

- Plaintiff Virtual Chart Solutions I, Inc. should be ordered to pay Surgical Notes, Inc.; Surgical Notes MDP, LP; Surgical Notes GP, LLC; and Surgical Notes RCM, LLC $138,506.00 as an award of their reasonable attorneys' fees ($80,574.50 for fees billed by Whitaker Chalk Swindle & Schwartz PLLC; $23,233.00 for fees billed by Siebman, Forrest, Burg, & Smith, LLP; and $34,698.50 for fees billed by Exall & Wood, PLLC), as well as $2,137.55 as an award of costs billed by Whitaker Chalk Swindle & Schwartz PLLC, for a total of **$140,643.55**.

- Plaintiff Virtual Chart Solutions I, Inc. should be ordered to pay MRI Centers of Texas, LLC $224,789.50 as an award of its reasonable attorneys' fees billed by Stanton LLP, as well as $13,562.69 as an award of costs billed by Stanton LLP, for a total of **$238,352.19.**

<u>Objections</u>

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An

objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 13th day of January, 2020.**

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE